106 763
s112 218

CASE 98—ACTION TO RELIEVE AGAINST FORFEITURE—JUNE 8.

## Allison, Etc. v. Cocke's Executor, Etc.
## Same v. Preston's Executor, Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. EXECUTORS—POWERS OF, PRIOR TO PROBATE.—An executory contract for the sale of land in Kentucky entered into by executors who had qualified in Virginia, but who had not caused the will under which they acted to be probated in this State, nor qualified under the statute in this State, is not void by reason of such failure, but may be ratified and become binding by a subsequent probate and qualification in this State and a tender of deeds pursuant to such contract.

2. EXECUTORY CONTRACT—OPTION—FORFEITURE.—An agreement entered into by two parties whereby one binds himself to purchase lands from the other at an agreed price, of which 5 per cent. was to be made on a certain date and the residue of such payment on or before another fixed date, with the stipulation that the 5 per cent. was to be forfeited if the purchaser failed to pay the residue of the cash payment on time, is an executory contract for the sale of land, and the five per cent. paid is not a mere price for an option to buy nor is it to be deemed liquidated damages for breach of the contract.

3. SAME.—A court of equity will relieve against a forfeiture incurred in such a case leaving the vendor to set off against the plaintiff's claim his actual damages sustained by the vendee's failure to comply with his agreement.

HELM & BRUCE FOR THE APPELLANTS.

1. One named as executor in the will of a Virginia testator, giving power of sale of land in Kentucky, has no power to make a valid contract of sale thereof, until the will has been probated and he qualified in Kentucky.

2. Such contracts, made prior to probate or qualification, are void, and

Allison, &c., v. Cocke's Exr., &c.    Same v. Preston's Exr., &c.

can not be ratified; and money paid thereunder, being without
consideration, may be recovered.

3. A contract for the sale of land, or a forfeiture for failure to com-
ply, can not be enforced by the vendor where he can not tender
an unencumbered title.

4. A pure forfeiture, even in a contract otherwise valid, will not be
enforced, especially where the party seeking to enforce the same
fails to tender performance on his part at the time mentioned in
the contract.

   Citations:' Gilbert v. Bartlett, 9 Bush, 54; Pryor v. Mizner, 79
   Ky., 232; Marrett v. Babb, 91 Ky., 93; Patterson v. Carneal, 3
   Mar., 619; Rutherford v. Clark, 4 Bush, 27; Genl. Stats., ch.
   39, art. 1, secs. 5, 9, 13; Owen v. Cowan's hrs., 7 B. M., 156;
   Shields v. Smith, 8 Bush, 601; Gulley v. Prather, 7 Bush, 167;
   Warfield v. Brand, 13 Bush, 77; Brewer v. Crabb, mans. op.
   filed May 4, 1880; Ballou v. Talbott, 16 Mass., 461; Abbey v.
   Chase, 6 Bush, 56; Sheffield v. Ladue, 16 Minn., 388; s. c. 10
   Am. Rep., 145; White v. Madison, 26 N. Y., 122; Ogden v. Ray-
   mond, 22 Conn., 379; s. c. 58 Am. Dec., 431; Hopkins v. Mehappy,
   11 S. & R. (Pa.), 129; Bank v. Flanders, 4 N. Hamp., 239; Story
   on Agency (9th ed.), 264a; Woodward v. Fels, 1 Bush, 162;
   City of Louisville v. Henning, 1 Bush, 381; Ray, &c., v. Bank
   of Ky., 3 B. M., 514; Watterman on Specific Performance of
   Contracts, sec. 410; Cleary v. Folger, 84 Cal., 316; (s. c. 18 Am.
   St. Rep., 187); Mason v. Caldwell, 5 Gillman, 189; 48 Am. Dec.,
   330; Liggett v. Shira, 16 Atl. Rep., 474; Wills v. Mfg. Natl. Gas.
   Co., 18 Atl., 721; Ray v. W. P. Gas Co., 20 Atl. Rep., 1065; Hahn
   v. Horstman, 12 Bush, 249.

SAME COUNSEL FOR APPELLANTS IN A SUPPLEMENTAL BRIEF MADE THE
   FOLLOWING ADDITIONAL CITATIONS:

   Railroad v. Hopkins, 87 Ky., 613; McMurtry v. Railroad, 84
   Ky., 465; Taylor v. Whiting, 9 Dana, 401; Bank v. Behan, 91
   Ky., 462; Wills v. Lewis, 4 Mitch., 271; Lewis v. Stafford, 4
   Bibb., 318; Thompson on Contracts, secs. 28, 117A; Lawson on
   Contracts, sec. 350.

WILLIAM MARSHALL BULLITT FOR THE EXECUTORS OF ELIZABETH
   R. COCKE, &C., APPELLEES.  (BULLITT & SHEILD OF COUNSEL.)

1. When a contracting person attempts to bind himself in a repre-
sentative capacity, when, in fact, he has no such capacity, he is
individually liable on the contract itself, and the representative
words used will be construed as *descriptio personae* only.  First
National Bk. v. Collins, 43 Pac. Rep., 499; Pumpelly v. Phelps,
100 Am. Dec., 463; Peterson v. Homan, 44 Minn., 166; Moss v.

Livingston, 4 N. Y., 208; Dewitt v. Walton, 9 N. Y., 570; Boy v. Gunn, 1 Denio, 108; Bush v. Cole, 84 Am. Dec., 343; Mason v. Caldwell, 48 Am. Dec., 330.

2. One who makes a contract in the name of another, claiming to be authorized by him to do so, is personally liable to perform the contract if he had no authority to make it for the other. Wells v. Maley, 5 Ky. Law Rep., 853; Dusenberry v. Ellis, 3 Johns. Cas., 70; Palmer v. Stephens, 1 Denio, 471; Sinclair v. Field, 8 Cow., 543; Richie v. Bass, 15 La. An., 668; Keener v. Harrod, 2 Md., 63; Weare v. Grove, 44 N. H., 196; Dodd v. Bishop, 30 La. Ann., 1178; White v. Skinner, 13 Johns., 307; Mitchell v. Hazen, 4 Conn., 495; Gillaspie v. Wesson, 7 Port., 454; Collins v. Allen, 12 Wend., 356; Roberts v. Button, 14 Vt., 195; Royce v. Allen, 28 Vt., 236.

3. A contract entered into without the requisite statutory power from the State is abortive and ineffective, while the power is lacking, but upon the acquisition of power it may be ratified and fully vitalized from the beginning. In short, every so-called void contract may be validated upon elimination of the vitiating element. Morawetz on Private Corporations, sec. 651; Fritts v. Palmer, 132 U. S., 282; Whitney v. Wyman, 101 U. S., 392; New Haven, &c., Co. v. Hayden, 107 Mass., 525; Goshen v. Stonington, 10 Am. Dec., 121; Lewis v. McElwain, 16 Ohio, 347; Campbell v. Young, 9 Bush, 240; Dorsey v. Banks, 55 N. W. R., 574; Anderson v. Santa Anna, 116 U. S., 356; Graham v. Boston, &c., R. R. Co., 118 U. S., 161; White Water Valley Co. v. Vallette. 21 How., 414; Cooley's Con. Lim., p.738, *et seq.* Also cited under the general treatment of the subject of void and voidable contracts: Bennett v. Morse, 39 Pac. Rep., 582; Raffles v. Wickelhaus, 2 H. & C., 906; Kyle v. Kavanaugh, 103 Mass., 356; Central Transp. Co. v. Pullman's Car Co., 139 U. S., 24; Oregon Ry. Co. v. Oregonian Ry. Co., 130 U. S., 1; Hess v. Werts, 4 S. & R., 356; Crolley v. Minneapolis, &c., Ry. Co., 14 Am. & Eng. R. R. Cases, 47; Hickory Farm Oil v. Buffalo, &c., R. R. Co., 32 Fed. Rep., 22; National Bank v. Matthews, 98 U. S., 621; Reynolds v. Crawfordsville Bank., 112 U. S., 405; Jones v. Habersham, 107 U. S., 174; Leazure v. Hillegas, 1 Serg. & R., 313; Goundie v. Water Co., 7 Pa. St., 233; Bone v. Canal Co., 5 Atl. Rep., 751; Chicago, &c., R. R. Co. v. Lewis, 53 Iowa, 101; Land Co. v. Bushnell, 11 Neb., 192; Barnes v. Suddard, 117 Ill., 237; Wright v. Lee, 51 N. W. R., 706; Foundry Co. v. Augustine, 31 Pac. Rep., 327; Mill Co. v. Bartlett, 54 N. W. R., 544; Whitman, &c., Co. v. Strand, 36 Pac. Rep., 682; Edison, &c., Co. v. Canadian, &c., Co., 36 Pac. Rep., 260; Kindel v. Beck, &c., Co., 35 Pac. Rep.,

766 KENTUCKY REPORTS. [Vol. 106

Allison, &c., v. Cocke's Exr., &c. Same v. Preston's Exr., &c.

538; R. R. Co. v. Evans, 66 Fed. Rep., 809; Thompson on Corporations, secs. 1, 2; Holmes' Common Law, chap. IX.

4. If one person assumes to bind another without any precedent authority whatever, that other may subsequently adopt the contract and take the benefits and liabilities of it. Such ratification relates back and is equivalent to prior authority. Lawson on Contracts, sec. 172; Bishop on Contracts, sec. 1108; Anson on Contracts, p. 337; Clark on Contract, p. 719; Forsythe v. Bonta, 5 Bush, 547; Starks v. Sikes, 8 Gray, 609; Gulick v. Grover, 97 Am. Dec., 728; Bank v. Sharp, 43 Am. Dec., 470; Everett v. U. S., 30 Am. Dec., 584; Strasser v. Conklin, 11 N. W. R., 254; Goss v. Stevens, 21 N. W. R., 549; Nesbitt v. Helser, 49 Mo., 383; Shelden Co. v. Machine Co., 90 N. Y., 610; Clealand v. Walker, 11 Ala., 1058; McCracken v. San Francisco, 16 Cal., 591; Despatch Line v. Bellamy Co., 12 N. H., 205; Kinsley v. Norris, 60 N. H., 131; Francis v. Kerker, 85 Ill., 190; Wallace v. Lawyer, 90 Ind., 499; McDowell v. McKenzie, 65 Ga., 630; Grogan v. San Francisco, 18 Cal., 590; Burgess v. Harris, 47 Vt., 322.

5. If a married woman contracts and performs or tenders performance she may have specific performance from the other. If she performs, the other party can not even rescind the contract upon offering to restore to her the consideration, much less can he recover his consideration without restoring hers. Neef v. Redmon, 76 Mo., 195; Walker v. Owen, 79 Mo., 563; Chamberlain v. Robertson, 31 Iowa, 408; Ham v. Boody, 51 Am. Dec., 235; Richards v. Doyle, 36 Ohio St., ——; s. c. 38 Am. Rep., 550; Logan v. Bull, 78 Ky., 607; Warwick v. Lawrence, 43 N. J. Eq., 179; Wilson v. Branch, 77 Va., 65; Darraugh v. Blackford, 84 Va., 509; Waren v. Brown, 57 Am. Dec., 191.

6. Appellants having insisted upon holding and exercising the right to assert an ownership in the property, and preventing the Cockes from using such a right, when the prospects for enormous profit were bright, can not when the speculation has failed, recover what they paid for that privilege. Mason v. Caldwell, 48 Am. Dec., 330; Twin Lick Oil Co. v. Marbury, 91 U. S., 587; Zabriskie v. The C. C. & C. R. R. Co., 23 How., 381.

Miscellaneous: Brinegar v. Chaffin, 3 Den., 108; Telegraph Co. v. Adams, 155 U. S., 688; Ballou v. Talbott, 16 Mass., 461; Gaither v. O'Doherty, 11 Ky. Law Rep., 595; Smith v. Cansler, 83 Ky., 367; Church v. Mott, 32 Am. Dec., 613; Arthur v. Broadnax, 37 Am. Dec., 707; Bibb v. Allen, 149 U. S., 481; Taylor v. Patrick, 1 Bibb., 168; Rutherford v. Clark, 4 Bush, 27; Cohens v. Virginia, 6 Wheat., 264, 399.

Allison, &c., v. Cocke's Exr., &c.   Same v. Preston's Exr., &c.

THOMAS W. BULLITT FOR THE SAME APPELLEES.    (BULLITT & SHEILD OF COUNSEL.)

1. Money paid under the advice of counsel, with a full knowledge of all the facts, and after due consideration of all the law applicable to those facts, can not be recovered on the ground that the counsel have since changed their mind as to the application of the law to the facts.   Bank v. Behan, 91 Ky., 562; R. R. Co. v. Hopkins, 87 Ky., 613; McMurtry v. R. R. Co., 84 Ky., 465; Louisville v. Henning, 1 Bush, 381; Ray, *et al*, v. Bank of Kentucky, 3 B. M., 514.

2. In the absence of fraud, duress, misrepresentation or mistake, money paid under a contract which has been fully executed upon both sides, can not be recovered, especially where the party seeking to recover can not restore to the other the consideration or replace the *status quo*.   Bishop on Contracts, secs. 627, 630, 633: Chestnut v. Harbaugh, 28 Smith (Pa.), 473; Finn v. Donohue, 35 Conn., 216; Uhler v. Applegate, 2 Casey, 140; Green v. Godfrey, 44 Me., 25; Shuman v. Shuman, 3 Casey, 90; Kinney v. McDermott, 55 Iowa, 674; Goughlin v. Knowles, 7 Met., 57; Congdon v. Perry, 13 Gray, 3; Beaman v. Buck, 9 Sm. & M., 207; Richards v. Allen, 17 Me., 296; Bennett v. Phillips, 12 Min., 326; Marsh v. Wyckoff, Bosw., 202; Clencey v. Crane, 2 Dec. Eq,, 363.

3. Upon the qualification of an executor, administrator, or executor *de son tort*, his title vests as of the death of the testator; the qualification relates back to the testator's death and validates all acts performed before qualification.   7 Am. & Eng. Ency. of Law, 194; Williams on Executors, 363 *et seq.*, 486 *et seq.*, 557; Crosswell on Executors, secs. 614-617; 2 Redfield on Wills, 14 and note, 16; Dearbon v. Mathes, 128 Mass., 194; Stagg v. Green, 47 Mo., 500; Dearman v. Maxfield, 38 Ark., 631; Wall v. Bissell, 125 U. S., 390; Foster v. Bates, 12 M. & W., 226; Brown v. Lewis, 9 R. I., 497; Kalckhoff v. Zaehrlaut, 40 Wis., 427; Hill v. Curtis, L. R., 1 Eq., 900, 100; Hatch v. Proctor, 102 Mass., 351; Vroom v. Van Horn, 10 Paige, 549; Magner v. Ryan, 19 Mo., 196; Shillaber v. Wyman, 15 Mass., 321; Andrew v. Gallison, 15 Mass., 325; Jewett v. Smith, 12 Mass., 309; Priest v. Watkins, 2 Hill., 225; Rattoon v. Ouerasker, 8 Johns., 125; Barnard v. Bateman, 76 Mo., 414; Wilson v. Wilson, 54 Mo., 213; Cook v. Cook, 23 S. C., 204; Witt v. Elmore, 2 Bail. L. R., 595; Lamb v. Helm., 56 Mo., 431; Stagg v. Stevenson, 68 Mo., 453; Howell v. Kirk., 41 Mo. App., 527; Boeger v. Langenberg, 42 Mo. App., 12; Spring v. Parkman, 12 Me., 127; Pinkham v. Grant, 78 Me., 158; Dorsey v. Banks, 55 N. W. R., 574.

4. If a contract be originally void for want of legal contractual capacity in one party, it may, upon the subsequent acquisition of

768 , KENTUCKY REPORTS. [Vol. 106

Allison, &c., v. Cocke's Exr., &c. Same v. Preston's Exr., &c.

the lacking power, be affirmed, renewed, and redelivered by mutual consent and becomes perfectly valid without an actual physical re-execution. Campbell v. Young, 9 Bush, 240; for full discussion and citation of authorities, see brief of William Marshall Bullitt for appellees.

5. Persons named in a will as executors, who sell real estate by virtue of a power conferred therein, act not as executors, but as the donees of a trust power. In short, they possess a duality of capacity—executors and donees of a trust power. It is in this latter aspect that they act with reference to real estate. Crusoe v. Butler, 36 Miss., 164; Conklin v. Egerton, 21 Wend., 430; Newton v. Bronson, 67 Am. Dec., 89; Lewis v. McFarland, 9 Cranch, 152; Clay v. Hart, 7 Dana, 1; Warfield v. Brand, 13 Bush. 77, 94; Lindley v. O'Reilly, 1 L. R. A., 79; Brewer v. Crabb (mans. opinion, 1880).

6. One holding an option on real estate can not demand that an incumbrance be removed until he has declared his intention whether or not he will take the land. Thompson v. Carpenter, 45 Am. Dec., 181 and note; Tiernan v. Rowland, 15 Pa. St., 441; Gaither v. O'Doherty, 11 Ky. L. R., 595; Handly v. Tebbets, 13 Ky. Law Rep., 280; Smith v. Cansler, 83 Ky., 367; Church v. Mott, 32 Am. Dec., 613; Mason v. Caldwell, 48 Am. Dec., 330.

Miscellaneous: Rutherford v. Clark, 4 Bush, 33; Gen. Stat., sec. 1, art. 1, ch. 39; Pryor v. Mizner, 79 Ky., 232; Shields v. Smith, 8 Bush, 601; Gen. Stat., sec. 5, art. 1, ch. 39; Same, sec. 9; 8 Am. & Eng. Ency. of Law., 443.

RANDOLPH H. BLAIN FOR APPELLEES, PRESTON'S EXRS. (H. R. PRESTON OF COUNSEL.)

1. Money paid under mistake of law. L. R., 3d. Ch. Div., 351; Pomeroy's Eq., p. 851; Underwood v. Brockman, 4 Dana, 309; Ray v. Bank, 3 B. M., 510.

2. Vendors bound individually. 5 Gill (Ill), 196, Mason v. Jordan; Hood v. Barrington, L. R. 6 Eq. Ca., 217.

3. Mutuality. Richards v. Green, 23 N. J. Eq., 536; Welsh v. Whelpley, 62 Mich., 15; Wylson v. Dunn, L. R. 34 Ch. Div., 569.

4. Sufficient if vendor show title at the hearing. Kimball v. West, 15 Wall., 377.

5. Right to rescind. Grymes v. Sanders, 93 U. S., 55; Murrell v. Goodyear, 1 De Gex, F. & J., 431.

6. Void and voidable contracts. Addison on Contracts, 92.

7. Ratification. Long v. Long, 62 Md., 71; Foster v. Bates, 10 M. & W., 226; Boyer v. Arch, 10 Exch., 333; Hatch v. Procter, 102 Mass., 351; Brown v. Lewis, 9 R. I., 497.

8. Powers of executor before qualifying. Wall v. Bissell, 125 U. S.

Rep., 382; Williams on Executors, 269; Priest v. Watkins, 2 Hill (N. Y.), 225.

9. Writings construed together. Thayer v. Luce, 22 O. St., 62.

10. Joint contract. Story's Eq. Pl., Sec. 169; Mason v. Eldred, 6 Wall., 238.

11. Implied dependency. Langdell's Ca. on Con., Secs. 105-6; Warvelle on Vendors, p. 123; Fry on Specific Per., p. 732; Pomeroy's Eq., p. 897.

12. Objections must be made known. Gregg v. Von Phul, 1 Wall., 274; Kenninston v. Blakie, 121 Mass., 552; Gerrish v. Norris, 9 Cush., 167; Curtis v. Aspinwall, 114 Mass., 187.

13. Precedent conditions must be performed. McCulloch v. Boyd, 120 Pa. St., 552; Gerrish v. Maher, 70 Ill., 140.

14. Statute of frauds. Miller's hrs. v. Antle, 4 Bush, 407; Gill v. Hewett, 7 Bush, 10; Ide & Smith v. Stanton, 40 Am. Dec., 700; Lee v. Cherry, 4 Am. St. Rep., 800; Rowland v. Garman, 1 J. J. Mar., 76; Harrow v. Johnson, 3 Met., 578.

15. Contract was executed. Woodbury v. Turner Day Mfg. Co., 16 Ky. Law Rep., 570.

16. Forfeiture, penalty, &c. Pollock on Prin. of Con., 447.

17. Vendee in default can not recover from vendor not in default. Wharton's Law of Con., vol. 2, sec. 743; Waterman on Spe. Per. of Con., 449; Bradford v. Parkhurst, 31 Am. St. Rep., 189; Haynes v. Hart, 43 Barb., 58; Ketcham v. Evertson, 7 Am. Dec., 386; Tipton v. Feitner, 20 N. Y., 428; Clarke v. Rochester, 20 N. Y., 627; Packer v. Button, 25 Vt., 193; Hansbrough v. Peak, 5 Wall., 497.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The records on these appeals show that Mrs. Elizabeth Cocke was the owner of about 600 acres of land, and her brother Col. Preston owned about 320 acres immediately adjoining it, on the Preston-street road, south of Louisville. About two years before the contracts here involved were made, Mrs. Cocke died, a resident of Virginia, leaving a will, by which her three sons were made executors. Some six months before the making of the contracts, Col. Preston died, a resident of Virginia, leaving a will, by which his two sons were appointed executors. All of the devisees under both wills lived in Virginia or Maryland. Each will gave to the executors the power to

770      KENTUCKY REPORTS.      [Vol. 106

Allison, &c., v. Cocke's Exr., &c.    Same v. Preston's Exr., &c.

sell the land in Kentucky, for the purpose of paying debts and of making distribution of the proceeds. For some time previous to the making of the contracts, the Cocke executors had made efforts to sell the land in their hands, and had given a number of successive options thereon to agents who were endeavoring to effect sales. The Preston executors had also given options to the Cocke executors, it being supposed that the two tracts lying together could be sold as one tract to better advantage. Prior to the making of the contracts, the Cockes, controlling the sale of both tracts, had been considering a scheme to sell the land through a projected land and improvement company, but the corporation was never formed, and little or no progress appears to have been made in putting the scheme into operation, except that some persons had verbally agreed to take stock in the corporation when formed. The agent of the Cocke executors in Louisville was Mr. John A. Stratton, and appellant Fawcett was acting with him in the effort to dispose of the land.

With a view of effecting a sale of the land through a syndicate, appellants Fawcett and Allison arranged a meeting with the executors of both wills, at Richmond, Va., on February 12, 1891. After considerable negotiations as to the price to be paid for the land, an agreement was finally reached; the Preston executors being induced to agree to the price fixed upon by a side agreement of the Cocke executors to pay them $2,500 for making the contract. The contracts, which were written upon the same paper,—the Cocke contract being first, and referred to in the Preston contract,—are as follows:

"This agreement, made this 12th day of February, 1891, between F. H. Allison and J. C. Fawcett, of Louisville, Kentucky, parties of the first part, and T. P. L. Cocke, Edmund

R. Cocke, and Preston Cocke, executors of Mrs. Eliza R. Cocke, deceased of the State of Virginia, parties of the second part, witness as follows, to wit:

The said Allison & Fawcett hereby agree to purchase from said Cocke's executors the following real estate, located in the county of Jefferson, Kentucky, to wit, a tract of land containing 609 acres, more or less, bounded on the south by Bickel's lane, on the west by the Preston street turnpike, on the east by the Poplar Level road, and on the north by a line common to Cocke and Preston, which was established by deed of partition between said Cocke and Preston dated May, 1836, by deed recorded in the Jefferson county clerk's office, Kentucky, D. B. S. S., p. 494, except 3,724 acres sold to H. Bickel, by deed of February 14, 1873, for the sum of two hundred and fifty thousand dollars ($250,000), to be paid as follows, one-fourth cash, and the balance on or before one, two, and three years, with interest at six per cent. per annum from date till paid; said deferred payments to be secured by deed of trust on said land. The said Allison & Fawcett hereby agree to pay five per cent. of said cash payment, said five per cent. amounting to the sum of twelve thousand five hundred dollars, on or before the first day of March, 1891; and they agree further to pay the residue of said cash payment, with six per cent. interest thereon from date till paid, on or before the first day of May, 1891.

"The said Allison & Fawcett hereby also agree that, in the event that they do not pay the residue of said cash payment by May 1, 1891, then said sum of twelve thousand five hundred dollars, paid by them on or before the first day of March, 1891, shall be wholly forfeited to said Cocke's executors, without recourse on the part of said Allison & Fawcett.

772          KENTUCKY REPORTS.          [Vol. 106

Allison, &c., v. Cocke's Exr., &c.   Same v. Preston's Exr., &c.

"And said Cocke's executors hereby agree that, in the event that the residue of said . cash payment is paid on or before May 1, 1891, and the notes for the deferred payments and said deed of trust are executed and delivered to them, then they will convey said tract of land to Allison & Fawcett, or their assigns, by good and sufficient deed of conveyance, with general warranty.

"It is further agreed by said parties of the first and second parts that, in the event that the residue of said cash payment is not paid on or before May 1, 1891, then this contract to be null and void and of no effect, except as to the payment of the said twelve thousand five hundred dollars to said Cocke's executors by said Allison & Fawcett. Witness the following signatures: [Signed] F. H. Allison. J. C. Fawcett. Edmund R. Cocke, Preston Cocke, Executors of Mrs. Elizabeth R. Cocke. T. P. L. Cocke, by Preston Cocke."

"We, F. H. Allison and J. C. Fawcett, hereby agree to purchase the land belonging to the estate of J. T. L. Preston, deceased, adjoining the Cocke land on the north, containing three hundred and twenty acres, more or less, for the sum of one hundred and sixty thousand dollars ($160,-000), payable in the same manner as the purchase price of said Cocke's land.

"And we also agree to make a deposit of five per cent. on said purchase price before the first day of March, 1891, which is to be wholly forfeited to said J. T. L. Preston's estate in the event that the residue of said cash payment is not paid on or before May 1, 1891.

"And we, T. L. Preston and Herbert R. Preston, executors of said J. T. L. Preston, deceased, hereby agree to convey said property in accordance with the provisions of the above contracts for the conveyance of said Cocke's land.

"And all of said parties hereby agree that all the provisions in the above contract with said Cockes shall be treated and considered as a part of this contract, except as to the area of tract sold and amount of purchase money to be paid.    Witness the following signatures:

"T. L. Preston and Herbert R. Preston, Executors of J. T. L. Preston.    Witness as to Herbert R. Preston: Luke Boyd."

Before the date at which the five per cent. cash payments were to be made, one of the Preston executors wrote Mr. Helm Bruce to employ him to represent the estate in the settlement of the matter, informing him at the same time that the Preston will had not been probated nor the executors qualified in this State.    Mr. Bruce replied that he had been employed by Fawcett on behalf of the other side; that his clients would be ready to pay the money, but expected the will to be probated and the executors qualified before payment was made, referring to the statute in that behalf; and suggesting that appellants were willing to pay the money to his (Bruce's) firm as trustees, to be paid over when the will was probated and the executors had qualified, or that the time of making the payment might be extended until the probate and qualification.

The payment of $12,500 to the Cocke executors was made to Stratton, as their agent, on February 28, 1891, and $8,000 was paid to Helm Bruce as trustee, to be paid over to the Prestons when the Preston will should be probated and the executors qualified. The Cocke will had been already probated, though the executors had not qualified in this State. Some question is made of whether the latter fact was known to appellants, but we do not regard that as very material.    They did qualify on March 23, 1891, and the Preston executors probated

their will and qualified on April 1st, when Bruce paid over to them the $8,000 held by him as trustee. A deed was prepared for the Cockes by their agent, Stratton, the form of which was objected to by them, and by mutual consent, at whose suggestion is immaterial, deeds were prepared for both the Cockes and the Prestons by appellants' attorneys, and forwarded to Virginia. On May 1st, the remainder of the cash payments was to be paid,—$50,000 to the Cockes and $32,000 to the Prestons. The Preston deed had gone astray in the mail, and the time for its tender was extended to June 1st. The Cocke deed was tendered on that date, and refused by appellants; the ground of refusal being stated to be that there was a mortgage of $12,000 upon about 100 acres of the tract lying next to the pike, due about eighteen months thereafter, and with no privilege of payment before maturity. The Cocke executors thereupon declared the whole transaction closed, declared a forfeiture of the $12,500 previously paid, and, in order to effect a sale to other parties, gave an option upon the land to others. The Prestons did not make tender of their deed until August 11th, when they offered to waive the forfeiture if appellants would immediately pay the remainder of the cash payment on the purchase price.

It is unnecessary to go over the discussions with regard to the mortgage upon the Cocke property, or the evidence in regard to it, further than to say that it is perfectly evident that the existence of this mortgage was not the real reason for appellant's failure to complete their cash payment, and had no effect whatever upon their action in this behalf. The reason they declined to make the payment was their inability to raise the money. The existence of the mortgage was a mere excuse, offered by them at the time, and which, under the circumstances of this case, we

do not consider a valid one. The mortgage seems to have been discussed prior to that date, was known to appellants, who made no objection, and, had they been in any position to comply with the contract on May 1st, was rather an advantage to them. At all events, it was not regarded by them as an objection, and we think they had waived whatever excuse its existence might have otherwise afforded.

There was some attempted negotiation looking to an adjustment of the controversies between appellants and appellees, which resulted in nothing. Appellants then brought these two suits, alleging, in substance, that the Cockes were not able to make a clear title; that appellants could not use the property with the mortgage upon it; and that the Cockes had no right to insist on the performance of the contract, or to forfeit the sum already paid, when they could not themselves comply. As to the Prestons, it was claimed that the purchase of both of the tracts was practically one transaction, their property not being available without the Cocke property, and that it would be inequitable to permit the Prestons to forfeit the $8,000 paid them on the supposition that both tracts could be acquired, when it proved impossible to obtain a clear title to the Cocke property. As we have said, we do not regard this contention as tenable.

The main contention is that the contracts for the sale of Kentucky lands were made, and purported to be made, solely by virtue of powers of sale to appellees as executors, —in one case under a will which had never been probated in Kentucky, and in both cases under wills as executors of which they had not qualified in Kentucky; that the contracts were absolutely void, and not susceptible of ratification, and the money paid on them was paid without

776 · KENTUCKY REPORTS. [Vol. 106

Allison, &c., v. Cocke's Exr., &c.  Same v. Preston's Exr., &c.

consideration, and should be returned. It is further contended that the retention of the $20,500 was a plain and simple forfeiture, whereby appellees seek to regain this large sum of money for which nothing was given.

The learned chancellor below, in a brief opinion, held that the contract was fully executed, without fraud, misrepresentation, duress, or mistake of law or fact, and was unimpeachable. He further held that it was not necessary to a valid execution of the powers under the wills that the persons named as executors, who were also donees of the powers, should qualify as executors in Kentucky, but that they possessed a duality of capacity,—executors and donees of the trust power; and, while it was necessary to a valid performance of any of their executorial duties in Kentucky that they should qualify, it was not so as to the trust power.

Were the contracts void for want of capacity to their execution, or were they merely voidable, so that the subsequent acquirement of capacity related back to and validated their original execution, if they were not repudiated in the meantime? We shall consider this question without reference to the proposition that, under the wills in question, the executors possessed a duality of capacity which enabled them, as donees of the power, to enter into a valid contract for the sale of the lands, without qualification as executors in Kentucky.

It is conceded that, at common law, the person named in the will as executor was considered to derive his power from the will, and not from the order of probate, which was deemed merely to be conclusive evidence of his authority, but not its source. If he acted in an executorial capacity, and the will was subsequently probated, the probate was conclusive evidence, his precedent act as executor was valid.

As said in Gilbert v. Bartlett, 9 Bush, 54, (under the Revised Statutes):

"At common law, the powers of an executor were derived from his appointment by the devisor and not from the probate of the will. Almost any act belonging to such an office could be exercised by the executor before the probate, except to sue and defend."

The Kentucky Statutes have, from time to time, made changes in the common law as to executors, though it seems clear, under the Revised Statutes, the executor was regarded as deriving his power from the will. General Statutes, c. 39, section 1, provided:

"The person named in a will as executor of it shall not act as such *to any extent* until the will, or an authenticated copy of it, is admitted to record, and he has executed bond and taken the oath required by law, in the court in which the record is made; but he may provide for the burial of the testator, pay the reasonable funeral expenses, and take care of and preserve the estate."

The words "to any extent" were here first inserted into the statute.

It is claimed that this provision of the statute makes every act of an executor for which he would be responsible on his executorial bond absolutely void and incapable of ratification, if done before probate and qualification.

Pryor v. Mizner, 79 Ky., 232, cited by appellants, and Marrett v. Babb's Ex'r, 91 Ky., 93, [15 S. W., 4], do not sustain this proposition. The former case was as to the right of an executor to appeal from a judgment refusing probate of the will under which he was appointed, and it was held that he had such inter-

est as gave him the right. The only question decided in the latter case was that qualification as executor in a sister State did not authorize the executor to administer assets here or act in our courts as such representative.

Nor does the case of Rutherford v. Clark, 4 Bush, 27, seem to us to settle the question. In that case a foreign administrator made a contract of sale of lands in Kentucky, agreeing to convey the legal title whenever he should satisfy the vendees that the sale was necessary for the payment of debts. Ten years later, after probate and qualification in Kentucky, he conveyed the land. A suit was brought to set aside this conveyance, on the ground that the sale was not made for debt, and *was* made by a fraudulent combination with the vendees. The sale was set aside upon the ground that the consideration was so glaringly inadequate as to amount to constructive fraud. The court there said, it is true, that the executory contract of sale was void for want of authority to sell the land in Kentucky, "and, as a void sale could not be confirmed, the conveyance was the first and only valid sale; and not only the possession, but the adequacy of the consideration, must be tested by that as the only contract of sale which passed any right, or can be judicially recognized for any purpose." But in that case the sole authority of the administrator was by reason of his appointment as such in another State. The decedent's will had not been probated in Kentucky. His power to sell depended solely upon the failure of personal assets to pay debts, and was held to be a peremptory, and in no sense a discretionary power. Whether any attempt at ratification of the original contract was made before the probate, and while the administrator's incapacity to act in Kentucky continued, does not appear. The sale was abortive, not

only because of a failure to probate the will and qualify in Kentucky, but also because of the non-existence of the facts necessary to authorize a sale at all.   It may be that the record presented an attempted ratification.   But, be that as it may, the question presented was as to the validity of the deed.   That alone was under consideration. And as said by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat, 264:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to' be taken in connection with the case in which those expressions are used.   If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision."

Assuming that the Kentucky statute, by its requirement of a bond from an executor or administrator with the will annexed to well and truly administer, not only the goods, chattels, credits, and effects that may come to his hands, but also "the proceeds of any sale, and the rents and profits of any estate, which may come to his hands, or any one for him, by color of his office, *which the will empowers him to sell*," etc., converts a power of sale, such as those under which appellees in these cases acted, into a strictly executorial power, we are still of opinion that the statute forbidding an executor to act as such, until after probate and qualification, does not abrogate what we conceive to be the general rule, that a subsequent probate and qualification will relate back to and validate acts done prior to the qualification, "which came within the scope of rightful executors' or administrators' authority, and which were in their nature benefiting to the estate, or, at least, such as other persons had no reason to complain of."   7 Am. & Eng. Enc. Law, tit.   "Executors."

In Williams on Executors, p. 557, the rule is thus stated: "So where goods have been sold after the death of the intestate, and before the grant of letters of administration, avowedly on account of the estate of the intestate, by one who had been his agent, it was held that the administrator might ratify the sale and recover the price from the vendee *in assumpsit* for goods sold and delivered; and accordingly it should seem that whenever any one, acting on behalf of the intestate's estate, and not on his own account, makes a contract with another before any grant of administration, the administration will have relation back, in order not to lose the benefit of the contract, so the administrator may sue upon it as made to himself."

In Hatch v. Proctor, 102 Mass. 351, the court said: "By the law of this State, as laid down by Hoar, J., in Alvord v. Marsh, 12 Allen, 603, the letters of administration, by operation of law, make valid all acts of the administrator in settlement of the estate from the time of the death. They become, by relation, lawful acts of administration, for which he must account. And this liability to account involves a validity in his acts which is a protection to those who have dealt with him."

In Vroom v. Van Horne, 10 Paige, 549, [42 Am. Dec., 94], Chancellor Walworth says: "The grant of administration has relation to the death of the intestate, and it legalizes all intermediate acts of the administrator."

It has even been held that probate and qualification before judgment would validate the institution and prosecution of a suit. Dearborn v. Mathes, 128 Mass., 194.

It is hardly necessary to multiply authorities upon this subject. Under statutes similar in effect to ours, the doctrine has been laid down that,

while the executor's powers before qualification are limited to the burial of the testator and the preservation of his estate, nevertheless his acts, within the proper scope of executorial authority, will be legalized by relation back, upon subsequent probate and qualification. This seems to be the rule in Missouri, Arkansas, Indiana, Maine, and Iowa. The underlying reason would seem to be that such statutory provisions are for the benefit of the estate of the decedent; and, while the other contracting party to such a contract might, before qualification of the executor, repudiate the contract, lack of qualification at the date of the contract affords no ground for such repudiation, if the qualification takes place before performance is demanded.

We conclude, therefore, that the contracts were valid during the month of April, 1891, and were undoubtedly so regarded and treated by both parties thereto; appellants claiming the right to control the land and appellees recognizing their right to do so.

The next question necessary to be decided is whether the contracts for the sale of land were mere options.

It is most earnestly contended on behalf of appellees that while, in form, contracts for the sale of the land, they were in reality mere options, and that the provision for the forfeiture of the five per cent. cash payments was merely a mode of expressing the consideration agreed to be paid for an option for the purchase of the property from February 12th to May 1st, which was to be treated as a part of the purchase-money in case appellants elected to take advantage of their option.

In our opinion, all the circumstances of the case combine to show that such was not the intention. Undoubtedly, appellants did not expect to put up

all the money themselves. But it is equally be-
yond doubt that they believed their arrangements
to raise the money were certain to be successful,
and that they were buying the property, and not paying
$20,500 for a mere option to buy, given for a little over
two months and a half. This view is strengthened by the
fact that the vendors had given numerous options pre-
vious to this transaction, without any payment therefor,
for as high as four months at a time, without any consid-
eration except the hope of effecting a sale of the property.
The language of the contracts is not apt for the creation of
an option. It is apt—and it was drawn under the super-
vision of men skilled in the law—to express a contract for
the sale of land. Circumstances far stronger than any
shown by appellees should appear to justify us in wrest-
ing the language from its natural and obvious meaning.

It remains to be considered whether the forfeiture clause
is such a forfeiture as equity will relieve against. The
general rule seems to be conceded that equity will not
enforce a forfeiture, but will, relieve against it. But it
is insisted that these contracts were fully executed on
both sides; that the appellants received and retained the
consideration for the five per cent. cash payments; that
it is impossible for them to return the consideration or
restore the *status quo*; and, under such circumstances,
money paid, even under a void contract, can not be re-
covered.

In the application of the authorities cited and
the argument adduced to the cases at bar there seems
to be some confusion. Had these been options, it may be
conceded that, though the price paid for them was exces-
sive, the contract for the option being separable from the
other contract, the money paid could not be recovered.

But having reached the conclusion that these were not mere contracts for options, setting forth the terms upon which the options might be exercised, but contracts for sales of land, did the declaration of a forfeiture separate that part of the contract from the remainder?

We have executory contracts for the sale of lands providing for a small cash payment, which was to be forfeited for non-compliance with the other provisions of the contracts. This provision of forfeiture, and that the contract should be void for non-payment of the remainder of the cash payment agreed upon, was not, in our view, inserted for the benefit of appellants, but for that of appellees. Appellants could not take advantage of it. To hold that they could do so would be to authorize them to take advantage of their own wrong, and, by failing to comply with one provision of the contract they had executed, release themselves from the remaining provisions. On the other hand, appellees had the right either to sue for the enforcement of the contract, or to declare it annulled for non-performance. Appellees, having this right secured to them to declare the contract at an end, availed themselves of their privilege. That they did so made the payment none the less a payment upon the original contract, and none the less a penalty, unless it can be construed to be an amount fixed as liquidated damages. It did not change the original contracts into mere executed contracts for options.

Whenever the conclusion is reached that these contracts were not options, but contracts for sale, with provisions for the forfeiture of the first payment for failure to make subsequent payments, the contention of appellees that they were executed contracts must fail; for, other-

wise, the power of a court of equity to relieve against a forfeiture would be made to depend upon the situs of the thing forfeited, and, if the penalty had already been paid when the forfeiture was declared, no relief could be afforded. The cases, therefore, cited upon this question cannot apply.

Was this a forfeiture, or was it an agreement for liquidated damages? The contract itself expressly denominates it a forfeiture. It is true that "the words 'liquidated damages' or 'penalty' are not conclusive as to the character of the sum stipulated to be paid, which must be determined from the matter of the agreement." (Pollock on Prin. of Con., 447.)

As stated in Sedgwick on Damages, (p. 250, n.): "First, the language of the agreement is not conclusive; second, the court endeavors to get at the true intent of the parties; third, it seeks to do justice between them." In following these canons of construction, it very frequently occurs that a stipulation for liquidated damages is held to be a penalty; and, on the other hand, it is not often that a stipulation for a penalty or a forfeiture is construed by the courts to be one for liquidated damages, for the reason that, as a rule, such stipulation, being inserted at the suggestion of the party to be benefited thereby, is expressed in language effective to make the stipulation operate for his benefit, so far as language can be made to do so. After careful consideration of the terms of these contracts, we are of opinion that the true intent of the parties was stated by the language used, and that the part of the cash payment first to be paid over was agreed to be and was a penalty for the non-payment of the second. The amount fixed, the circumstances, and the language used all point to this conclusion.

Upon this question the case of Woodbury v. Tur-
ner, Day & Woolworth Mfg. Co., 96 Ky., 461, [29
S. W., 295], is relied on by appellees. In that
case an effort was made to effect the purchase of all the
ax-handle factories in this country, and combine them all
in one concern. A contract was made for the purchase
of appellee's plant. Twenty-five thousand dollars was de-
posited with a trust company as a guaranty for the per-
formance of the contract by the purchaser, and it was pro-
vided that, in the event of his failure to complete the con-
tract, that sum was to be paid by the trust company to
the vendor, "by whom it is to be received in full satisfac-
tion of all claims against said party of the second part, or
his assigns for any damages arising from such breach of
contract," with a proviso that, in the event of the com-
pletion of the contract, it was to be deducted from the
purchase-money agreed to be paid. Under the peculiar
circumstances of that case, this stipulation was held not
to provide for a penalty, but for liquidated damages, and
the ruling was based in the opinion upon the fact that
the limit of damages to be recovered by the vendor was
fixed at $25,000; that the contract was for the sale of a
going concern, valued at from $350,000 to $375,000, with an
average annual output amounting to some $350,000; and
that "this vast business was put into the hands of the man-
ager of a rival enterprise, and its extent and detail laid
open to his inspection, yet in no state of case, as we un-
derstand the contract, could the appellee recover a greater
sum in damages to their business for the risks
incurred than the sum of twenty-five thousand dol-
lars. It was there held that, "if the appellee had
instituted its suit for specific performance, the an-
swer would have been that the contract had already

**786**      KENTUCKY REPORTS.     [Vol. 106

Allison, &c., v. Cocke's Exr., &c.   Same v. Preston's Exr., &c.

been performed, because it provides that, if the sale is not consummated, the sum of twenty-five thousand dollars already paid to the seller is to be the price of that failure." Not so in the case at bar. Here, as we have seen, the vendor had the option either to bring suit for specific performance, or rescind the contract and rely upon the provision for a forfeiture.

In the Woodbury case the court, through Judge Hazelrigg, said: "It can not be said that the sum paid is so excessive in amount, as liquidated damages, when the nature of the transaction is considered in all its parts, *and the impossibility of estimating the damages to defendant by reason of the default of plaintiff, by any known rule of law,* is fully considered, as to require the court to disregard the terms of the contract in order to relieve plaintiff from a hardship."

That case is not in the same class as the cases at bar. In these cases it would seem that the amount of damage inflicted by the non-performance of the contract on the part of appellants should be readily ascertainable. The general rule which we think applicable in such cases is thus stated in Bradford v. Parkhurst, 31 Am. St. R., 189, [30 Pac., 1106]:

"When a contract of sale and purchase of lands is abandoned or rescinded by the parties, the vendee, though in fault, may recover back installments paid for the purchase money, less the actual damage to the vendor occasioned by his breach of the contract."

We do not deny that, as said in Eastman v. Plumer, 46 N. H., 464, "when the circumstances justify the belief that his intention was to perform the contract only in case it suited his interest, he will forfeit all claim to equitable relief." But here ap-

pellants were not only willing, but anxious, to perform the contract. Nothing prevented their so doing but absolute inability.

We are of opinion, therefore, that a court of equity should relieve against the penalties sought to be enforced under these contracts, and compel the restitution of the purchase money paid, less the actual damage to the vendors occasioned by the breach.

It is objected that this particular relief was not sought by the pleading. The recovery of the specific amounts paid is expressly prayed for in the petitions, and it is averred that appellees claim those amounts were forfeited to them as penalties. There are also prayers for general relief. Under these prayers and averments, we think the relief sought can be granted in these actions. The question of the granting of this relief has been fully argued on both sides.

But, as to the question of damages, we are not inclined to take the roseate view contended for by counsel for appellants, that the amount is limited to the expenses incurred by the executors in coming from Virginia to qualify. They are entitled to deduct whatever amount they can show they have been damaged by the breach of what is conceded to have been an advantageous contract.

For the reasons given the judgments are reversed, and the causes remanded, with directions for further proceedings consistent herewith.