### SHERBURNE v. HIRST et al.

#### (Circuit Court, D. Oregon.   March 13, 1903.)

#### No. 2,730.

1. DAMAGES—CONSTRUCTION OF CONTRACT—PENALTY OR LIQUIDATED DAMAGES.
    A provision in a contract that time is of its essence, and that payments made thereon are to be deemed damages and retained as such in case of a future default, is not conclusive on the court, and where it is apparent from the whole contract that the provision is in fact one for a penalty, and not for damages, the contract will be so construed.

2. SAME—RELIEF AGAINST PENALTY.
    A supplemental agreement extending the time for making the final payment on certain lands contracted to be sold by defendants to com-plainant, and on which·complainant had made partial payment, provided that time was of its essence, and that, on default in making such final payment within the time extended, defendants should be released from any obligation to convey the property, and the payments made thereon should be deemed and considered as damages which defendants had sustained by reason of such default.   The agreement contained a further statement that "it is understood and agreed that, in case of default by

---

¶ 1. See Damages, vol. 15, Cent. Dig. § 157.

the second party, the first parties expect to sell the land to another party." It was admitted that defendants had at the time received an offer of a higher price for the land from another party, who was the one referred to in the agreement. *Held,* that under such circumstances the provision for the forfeiture of the payments made was clearly one for a penalty, and not for damages, and that, the default having occurred, on which defendants immediately made the second sale to their advantage, a court of equity would grant relief against such penalty by requiring repayment of the sum paid by complainant on the contract.

In Equity. On demurrer to bill.

Gantenbein & Veazie, for complainant.

Cotton, Teal & Minor and J. W. Bennett, for defendants.

BELLINGER, District Judge. On the 17th day of August, 1901, S. F. Cook and the defendants entered into a contract in writing by which the defendants sold to Cook, for the sum of $50, an option to purchase certain timber lands, situated in Douglas county, Or. The agreement recites that:

"It is understood that this option is to expire at noon August 26th, 1901, when said S. F. Cook shall become the purchaser of said land by the payment of certain moneys already agreed upon or shall forfeit this option with the fifty dollars. It is further agreed that a telegram from said S. F. Cook shall be considered the same as a personal meeting."

The price agreed upon was $7.25 per acre, to be paid as follows: $950, August 26, 1901; $6,500, September 26, 1901; and the balance, January 15, 1902. On the 26th day of August, 1901, Cook gave notice to the defendants of his acceptance of the option, and paid to them the further sum of $950, as provided for in the option; and thereafter, on about the 26th day of September, 1901, he paid to the defendants the further sum of $6,500. The defendants thereupon, in conformity with their agreement, executed deeds for the conveyance of said lands to Cook, and placed the same in escrow with the First National Bank of Portland, Or. Thereafter, about the 15th day of January, 1902, the date provided for the last payment, the defendants extended the time for such final payment, and on the 15th day of February, 1902, in pursuance of such extension, a further agreement in writing was entered into between the parties, which recited the former agreement, and provided for an extension of time in which the final payment was to be made until the 15th day of May, 1902. This agreement was in consideration of the sum of $1,000 then paid by Cook to the defendants. The provision of the new agreement was that, in addition to said final payment, which aggregated the sum of $44,336.86, Cook was to pay interest at the rate of 6 per cent. per annum from the 15th day of January, 1902, until the time final payment was made, and all taxes assessed upon the property sold for that year. There was a further condition as to securing a part of the final payment, not necessary to be considered in this connection. The two concluding paragraphs of the supplementary agreement are as follows:

"In the event of failure to comply with the terms hereof by said second party, the said first parties shall be released from any and all obligation in law or in equity to convey said property, or any part thereof, to the second

party; and said second party shall forfeit all right thereto; and the money thereunder paid by the second party shall be deemed ·and considered as damages which the first parties have sustained by reason of such default on the part of the second party.

"It is distinctly understood, and the principal consideration to the first parties for the execution hereof, and the extension of the time for final payment as aforesaid is, that time is of the essence of this contract; that the stipulations hereof are to apply and bind the heirs, executors, administrators, and assigns of the respective parties hereto; it being specially understood and provided that, coupled with the forfeiture clause hereinbefore referred to, time is intended and hereby is made of the very essence of this contract. And it is understood and agreed that in case of default by the second party the first parties expect to sell the land to another party."

Cook was unable to make the final payment on the 15th day of May, 1902, as provided for in said agreement, and thereupon sought from the defendants a further extension of time of five days in which to make the same; but the defendants refused to allow him any extension, and declared their purpose of proceeding immediately to sell the lands to another party, as specified in the last written agreement.

It is alleged that, prior to the 15th day of February, 1902, the time of the making of the last agreement, the defendants had received an offer for the lands sold to Cook, from one William Coach, and were, at the time of the making of said agreement, contemplating a sale of the said lands to the said Coach, in case Cook did not become the purchaser thereof; that said Coach was the other party referred to. in the agreement as the party to whom the defendants expected to sell the lands in case Cook made default. It is further alleged that, immediately after the default of Cook, the defendants entered into negotiations with said Coach for the sale of the lands in question to him, and that about the 15th day of June, 1902, a sale of the lands to Coach was agreed upon, and about the 1st of July, 1902, said lands were sold and conveyed by the defendants to said Coach for a large sum of money paid therefor by Coach and received by the defendants. Complainant alleges that he has no means of knowing how much the defendants received from Coach as the purchase price for the lands so sold to him, but that he is informed and believes that the sum is not less than $8 per acre for the whole of said lands—the number of acres being 7,287.85 in all; and it is alleged that the sum so received was more than sufficient to cover the whole of the purchase price contracted to be paid by Cook, with interest and taxes and expenses of sale, and that the defendants have received from Coach an amount sufficient to make them entirely whole, without recourse for damages upon the moneys paid by Cook to them.

Complainant is the assignee from Cook of all the latter's right and claim to be repaid the moneys advanced to the defendants by Cook as aforesaid.

The plaintiff prays that the defendants may be required to allege and show forth what damages they have sustained by reason of Cook's default, and that an accounting may be had respecting such damages, and of the money received from Coach on the sale to him, and that the defendants may be decreed to pay to plaintiff such sum as may be due on account of the $8,500 paid by Cook as alleged, and for such other and further relief as may be agreeable to. equity.

To this complaint the defendants demur, on the grounds: First, that it appears from the bill of complaint that the plaintiff is not entitled to the relief prayed for; and, second, that the plaintiff has a full, adequate, and speedy remedy in a court of law.

The general rule is that, where there is no certain measure of the injury which will result from the violation of the terms of an agreement, the parties may fix upon a sum which shall be compensation for such violation, and this is what has been attempted in the present case. The provision in the contract that time is of the essence of the contract, and the payments made are to be deemed damages, is not conclusive of the question as to whether the money paid is to be deemed damages or a penalty. "If upon the whole agreement the court can see that the sum stipulated to be paid was intended as a penalty, the designation of it by the parties as liquidated' damages will not prevent this construction." 1 Pomeroy's Eq. Jur. § 440.

Upon the facts alleged, there is not the least doubt that the money forfeited to the defendants by the terms of the agreement was intended as a penalty. The agreement is exceptional in this, that it contemplated a sale to a particular person upon Cook's default: "And it is understood and agreed that in case of default by the second party the first parties expect to sell the land to another party." It is alleged that prior to this agreement the defendants had received an offer from one William Coach, and that he was the person referred to in the agreement as "another party," to whom it was expected to sell the land if Cook made default. The expectation was to sell to Coach upon an offer then existing, and which complainant alleges, upon information and belief, was of a sum larger in the aggregate by above $5,000 than the price Cook was to pay. Suppose there had been an agreement between Cook, Hirst, and Coach by which Cook was to have the option to purchase this land on the terms embodied in this agreement, and that upon Cook's default Hirst was to sell and Coach purchase the land at a price $5,000 greater than that to be paid by Cook; would it be seriously contended that a stipulation by which on his default Cook should pay Hirst $8,500 as damages sustained by Hirst was not a penalty—that Hirst was entitled to $8,500 from Cook to compensate him for the advantage that had resulted to him in the sale of the property at an advance of $5,000 over what Cook was to pay? And this is what the case comes to. The clause in question was in effect an agreement by the parties that, if Cook made default, the defendants should sell to Coach for a sum known at least to the defendants to be much larger than Cook was to pay; and so they did, immediately on Cook's default. The provision that time was of the essence of the contract had reference to the acceptance of the offer to purchase by Coach. It was to enable Hirst to avail himself of the more advantageous offer of Coach. Cook's default occurred on the 15th day of June, and on that day a sale was agreed upon between the defendants and Coach. There was no damage to the defendants, but a large profit, as a consequence of Cook's default, and this identical sale was foreseen and provided for in the agreement with Cook. To say that in such circumstances the parties intended that the defendants should retain the $8,500 paid by Cook as compensation for an injury done

them by his default is unreasonable. The court can see that it is a penalty, and no words in the contract can make anything else of it.

The cases cited by the defendants are the usual cases where payments have been made upon contracts for the purchase of lands under an agreement that such payments should constitute liquidated damages, and they are cases where there was no certain measure of the injury that would result from a violation of the agreement. In one of these cases, Hansbrough v. Peck, 5 Wall. 499, 18 L. Ed. 520, the purchaser making default had been in the possession and enjoyment of the premises for two years, and the court in its opinion says that, with every disposition to temper the sternness of the law as applicable to the grounds for relief relied upon, "We are compelled to say that, according to the settled principles both of law and equity, a case for relief has not been established."

In Glock v. Howard, 55 Pac. 713, 43 L. R. A. 199, 69 Am. St. Rep. 17, decided in the Supreme Court of California, there was a contract for the purchase of land, made in 1891. The purchaser was to pay in installments until February 21, 1895. The defendant agreed to cultivate the land for three years and plant the tract to fruit trees. For the land the plaintiff was to pay the aggregate sum of $625, with interest on deferred payments, and $375 for the cultivation and planting of trees undertaken by defendant. He was also to pay all taxes and water rates. On the former account plaintiff paid $250 and interest, and on the latter $125 and interest; a total of $375. Plaintiff made default, and several months thereafter made a tender of the amount due under his contract, and, upon the refusal of the defendant to accept the same, brought his action to recover the money paid under the contract. The parties had stipulated that time was of the essence of the contract, and that, on default of the purchaser, the installments paid were to be treated as liquidated damages. The case is a good illustration of the rule which permits the parties to fix the damages when there is no certain measure of the injury that will result from a breach. When the life and requirements of the contract, the amount paid, and the length of time the default has continued, are considered, there is no room for an inference that the damages fixed were greater than those suffered. The court in its opinion quotes from Lord Eldon in Hill v. Barclay, 18 Ves. 59:

"The result of experience is that, where a man, having contracted to sell his estate, is placed in this situation: that he cannot know whether he is to receive the price when it ought to be paid—the very circumstance that the condition is not performed at the time stipulated may prove his ruin, notwithstanding all the court can offer as compensation."

The reason here stated for the conclusion reached is illustrated by the following extract from the opinion, citing Pomeroy on Specific Performance:

"It may frequently be of the utmost consequence to the vendor that he should have the right to enforce the contract and receive payment for his land in money, since he may much prefer the full purchase price to retaining the estate and receiving smaller monetary compensation by way of damages. And, finally, it is to be considered that during the life of such contracts the vendor foregoes his right to convey to another. He may thus lose an opportunity to make an advantageous sale, and, while this right is admittedly valuable, it is extremely difficult to put a price upon it."

These considerations, as already appears, do not apply in the present case. Here the opportunity to make another sale in fact existed, and was within the contemplation of the parties when the contract in question was entered into. The facts alleged have the effect of an agreement between the purchaser, the defendants, and Coach, to the effect that, upon the purchaser's failure to pay the full purchase price, his contract of purchase was to be abandoned, and the defendants were to sell, and Coach to buy, for a price in advance of that agreed upon in the abandoned contract. It is well settled that after a vendee's breach the vendor may agree to a mutual abandonment, in which case the vendee in default is entitled to a repayment of his money. In such case the covenant for liquidated damages is held to be void. If the parties may so agree after default, a fortiori they may so provide in the agreement itself. Without this agreement and understanding, and the consideration for it, the purchaser, by tender or full payment within the five days' time for which he asked an extension, or within a longer and reasonable time, might have insisted upon performance by the defendants or repayment of the money paid. It could be readily seen at all times that no damages would result from the default of the first purchaser, and the stipulation to allow the defendants to retain $8,500 as pretended damages is a mere expedient to get such sum without any consideration therefor. The claim asserted by the defendants to this money is shocking to the moral sense. If equity will grant relief against penalties whenever the actual damages sustained by the creditor party can be adequately compensated, there is all the more reason why it should do so in a case like this.

It is held in Re Dagenham Dock Co., 8 Chan. App. Cases, 1022, that where there is a stipulation that if on a certain day an agreement remains wholly or in part unperformed—in which case the real damages may be either very large or very trifling—there is to be a certain forfeiture incurred, that stipulation is to be treated as in the nature of a penalty, from which the court will grant relief. To the same effect is the case of Allison v. Cocke's Executors (decided in the Kentucky Court of Appeals) 51 S. W. 593.

The doctrine that equity will relieve against a penalty or forfeiture where the damages resulting from nonperformance are readily ascertainable is not open to question.

The defendants seriously put forward, as one of the grounds of their demurrer, the alleged fact that the plaintiff has not offered to do equity, by which is meant, as must be presumed, that the plaintiff has not offered to pay the defendants the damages which they have not suffered, or rather has not offered to pay them for the large advance which they have realized on the second sale contemplated in the agreement in question as a result of its abandonment upon Cook's default.

The demurrer is overruled.