Gregory v. Hughes.

ROBERT GREGORY, ADMINISTRATOR *de bonis non*, v. MARTHA C. HUGHES.

Where a bond for title to certain land, in the penal sum of $1000, was authenticated and presented to the administrator and Chief Justice in 1847 (the law of 1846, then in force, requiring claims for land as well as for money to be so presented) and by them allowed and approved ; in a proceeding commenced by the claimant, in the County Court, for an order to sell property of the estate to pay said claim, it was held that the bond was primarily a claim for land, and, in the absence of allegation and proof of special circumstances, that the presentation, allowance and approval of said bond did not constitute it a claim for money without condition.

Appeal from Navarro.   Tried below before the Hon. John Gregg.

This was a proceeding commenced in the County Court to

May Term, 1856, by appellee as a creditor of the estate of James Hughes, deceased, to compel the administrator *de bonis non*, to sell property to pay the claim of the complainant. The claim set out was a bond from James Hughes to John Welch, dated June 2d, 1838, in the penal sum of $1000, conditioned that the obligor should convey to the obligee one-third of his headright league of land, as soon as he should obtain a patent therefor, upon the performance of certain things (location of land certificates) by the obligee. Affidavit of said Welch, Oct. 25th, 1847, " that the above bond is just, due and unpaid." Indorsed same day by the administrator of said Hughes, that he had " no objection to the payment of the above bond;" also same day, by the Chief Justice, that he approved the above bond. Said claim was assigned to the complainant on the 26th of April, 1851. The petition merely stated the above facts, and asked that the administrator *de bonis non* of said Hughes be ordered to sell property to pay said claim. The administrator *de bonis non* demurred and answered; and the demurrer being sustained by the County Court, and the proceeding dismissed, the complainant appealed to the District Court, where the judgment was reversed and a *procedendo* awarded.

*C. M. Winkler*, for appellant, argued that the bond was primarily a claim for land, and *that* only upon proof of performance of the conditions which constituted the consideration for which it was given; and that the acceptance and approval by the administrator and Chief Justice did not change its character. (Hart. Dig. Art. 1095, 1097.)

*R. Q. Mills*, for appellee. The appellant contends that the acceptance was intended for the land, and not the money mentioned in the bond. If such was the case, it should have been shown by plea, and not by general exception. The bond was not presented in the manner pointed out by law to recover the land; (Hart. Dig. 1070, 1071;) but it was presented in the manner pointed out by law to recover money. (Id. 1095, 1096.) The only difference between the statutes of 1848 and 1846, in regard to claims for land, is, that the statute of 1846 required land claims and all others to be sworn to. But the mode of enforcing title to land on bonds against estates was still the same as under the law of 1846. If this was a land application instead of

money, where is the decree for the land? The presentation, acceptance and approval of this bond, show that the matter had been adjusted between all parties, and that the locator accepted the one thousand dollars instead of the land. And this conclusion is strengthened by the use of the word "payment" by the administrator in his acceptance, which term applies exclusively to moneyed affairs. The administrator could not mean by saying he had no objections to the payment of the bond, that a decree might be obtained against him for title. Applications for title to land did not require any such indorsement from him, and moneyed claims did. Hughes had failed to make title, which condition broken, Welch was entitled to the thousand dollars stipulated to be paid. (11 Tex. R. 273; 2 Greenl. Ev. Sec. 258, 259; 7 Johns. R. 72; 15 Id. 200; 13 Wend. 507.)

ROBERTS, J. The primary object of this bond was to secure a title to one-third of a league of land. The obligation for the sum of one thousand dollars was the security given for the attainment of that object. It is not an alternative contract, giving any of the parties the option to choose between them. It only becomes an obligation for money, in the shape of damages, upon some contingency which gives the obligee the right to so treat it. (Hemming v. Zimmerschite, 4 Tex. R. 159.)

The effort to convert this obligation into a moneyed claim against the estate, is based on the manner in which it is approved by the administrator. The language used is as follows: "I have no objections to the payment of the above bond." And the Judge of the Probate Court says: "I approve the above bond." From the use of the word payment, it is argued that it was intended between the parties to stipulate the amount of the bond, as the damages to be paid; and that it was thus recognized by the administrator as a claim for money against the estate. Admitting the right of the administrator to change the instrument from its primary object, the intention to do so should be plainly manifested. The statute of 1846 (Hart. Dig. Art. 1095,) prescribed "that every claim for money or personal property or for land, before it can be acknowledged, must be verified by the affidavit of the owner before the Judge of Probate or a Notary Public, stating what part is due and unpaid and not satisfied; and when thus verified and presented, the executor or administrator shall indorse thereon his acceptance or rejection, with the date of presentation."

Whether the claim was for money, or for land, the owner was required to swear, that it was due, unpaid, and not satisfied. The approval of the administrator was but responsive to this affidavit, that he had no objection to its payment as sworn to. That is, if it imported a demand for money, he had no objection to its payment; if it imported a claim for land, he had no objection to its payment. We are thrown back then upon the legal import of the instrument, to ascertain what was intended by the terms used in the administrator's approval; and it is well settled that it is *prima facie* a claim for land.

If there were any circumstances, which would have varied this construction, as that it was understood and agreed that the administrator could not make a title for the particular land, and that the sum of one thousand dollars was agreed upon as a substitute for the land, and that that was what was intended at the time, they should have been shown to have existed. In their entire absence in this case, the ordinary construction must be applied, and it must be held, that this obligation was not a demand for money, and that therefore the decision of the County Court, in dismissing the proceeding was right, and the judgment of the District Court, reversing that decision, was erroneous.

Judgment of the District Court is reversed, and judgment of the County Court affirmed, and cause remanded for observance.

Reversed and reformed.