JOHN STEEL v. H. E. LONG, MARY A. LONG, and T. J. FOSTER, Appellants.

Forfeiture: LAND CONTRACT. A failure to make a payment at the time agreed does not of itself work a forfeiture of contract, but forfeiture for such cause is optional with the payee, the contract having, after reciting the agreement of S to sell to J certain land, and, after receipt of full payment, to make a deed to J, and of J to make the payments in certain installments, provided that, till said payments are fully and promptly paid, no title shall pass; that time is of the essence of the contract, and, if there be any default in any of the payments, then all rights of J, except as hereinafter provided, shall, because thereof and thereby, be immediately forfeited without notice from S; and that, unless S shall, in writing, expressly waive such forfeiture, J shall thereafter simply be a tenant in common at sufferance, and shall surrender

possession on demand; and that, in case of forfeiture, all improve-
ments may be retained by S as liquidated damages for breach of
the contract and for rent; or S, waiving such forfeiture, may at
any time before such surrender proceed to require the fulfill-
ments of J's obligations, or may treat any amount unpaid as
overdue.

Quieting Title: PARTIES. One in possession of land under an agree-
ment of another to sell it to him, and to convey it to him on pay-
ment of the purchase price, is not bound by decree in suit to
which he is not a party, against such other, to quiet title.

*Appeal from Dallas District Court.*—Hon. J. H. Apple-
gate, Judge.

Thursday, December 16, 1897.

Plaintiff states as his cause of action that he is the
owner of the southeast quarter of section 26-81-27,
Dallas county; that he derives his title through Pliny
T. Sexton by virtue of a purchase under a contract in
writing set out; that upon the execution of said con-
tract he went, and has ever since remained, in posses-
sion of said land thereunder; that he has performed all
the conditions thereof, and has been ready and willing
to perform the same, and that no forfeiture of said con-
tract has been made or declared by said Sexton; that
defendants claim some right, title, or interest in and to
said land, but have none therein. Plaintiff prays to be
established and confirmed in his title and estate as
against the defendants, and that they be barred from
claiming any right in said land, and for costs. The
contract set out, dated October 6, 1891, shows: That
for the consideration named Sexton agreed to sell to
plaintiff said land. That plaintiff agreed to pay there-
for four thousand dollars, as follows: "$200.00 cash
down; $200.00 on March 1, 1892; and the balance in
installments of $100.00, or multiples thereof to amount
of $500.00, on March 1 in each succeeding year, as per
second party's note to said first party; and agrees to pay

on March 1, 1893, and annually thereafter, interest thereon at the rate of eight per cent. per annum until the same be fully paid." Plaintiff also agreed to pay all taxes before delinquent, and to pay the expenses of insurance; all taxes, expenses of insurance paid by Sexton, and all interest to be treated as additional and overdue principal. Sexton agreed, upon receiving full payment of purchase money, taxes, expenses of insurance, and interest, to make to plaintiff a warranty deed of said land. Following these recitals, said contract provides as follows: "It is expressly agreed, however, that until and unless the aforesaid payments shall be fully and promptly made, no title whatever to said premises shall pass to said second party, but the latter may occupy the same, while faithfully and promptly fulfilling all the obligations of this instrument, as the tenant of the first party, without charge, except as hereinafter provided, and shall neither commit nor permit any waste thereon. And it is expressly further agreed that time is the essence of this contract, and, if there shall be any default in any of the aforesaid payments, or any breach of the provisions of this instrument by the second party, then all rights of said second party hereunder, except as hereinafter provided, shall, because thereof and thereby, be immediately forfeited, without notice from the first party; and that, unless the first party shall, in writing, expressly waive such forfeiture, said second party shall thereafter be simply a tenant at will and sufferance, and shall surrender the possession of said premises to said first party on demand, without further notice. In case of such forfeiture the latter shall not be chargeable with any improvements that shall have been made on said premises, and may retain same, and all insurance thereon, together with all growing crops, and said one-half of the purchase money, and all interest, taxes, and expenses of insurance paid

thereon, as liquidated damages for the breach of this contract, and for rent of said premises. Or the first party, waiving such forfeiture, may at any time thereafter before the surrender of the premises as stipulated, take proper legal proceedings to require the fulfillment of the second party's obligations under this contract, or may treat all or any portion of any amount unpaid hereon as overdue." Defendants Long answered, admitting that plaintiff had possession of said land; that H. E. Long makes some claim of title and right thereto, and denying the other allegations of the petition. H. E. Long, as further defense and cross bill, alleges, in substance, as follows: That he is the owner of said land, and that his title and ownership are based upon the following grounds: That Sexton sold said land to William Torpey, and that Torpey thereafter, and prior to September 27, 1882, went into possession; that about March 1, 1882, William Dickerson obtained a judgment against William Torpey in the circuit court of Polk county for four hundred and twenty-eight dollars and forty-two dollars attorney's fees, a transcript of which was filed about March 16, 1882, in the office of the clerk of the court of Dallas county; that said Torpey was then in possession, and claiming to be the owner of said land; that execution was issued on said judgment April 21, 1892, and levied upon said land as the property of William Torpey, and sold under said execution on May 21, 1892, to H. E. Long, to whom a certificate was issued which he thereafter assigned to Mary A. Long; that on May 23, 1893, a sheriff's deed was executed to Mary A. Long, and she thereafter, on September 25, 1893, conveyed said land to H. E. Long. It is upon these alleged facts that H. E. Long based his claim of title. He further alleges that prior to the bringing of this action plaintiff had failed to pay the installments of purchase money and the taxes as agreed in said written contract,

by reason of which he had lost all rights in said land. He further alleges that on July 10, 1893, Mary A. Long commenced an action against William Torpey, Martin Torpey, and Pliny T. Sexton to quiet her title to said land; that said defendants failed to appear, and that on September 12, 1893, decree was rendered quieting the title in said plaintiff; that said decree was in full force when this action was brought; and that prior to the time Mary A. Long brought her said action the plaintiff had forfeited all rights under said contract, and that he is wrongfully in possession of said land. Defendant H. E. Long prays to be quieted in his title, and for possession. Defendant T. J. Foster answered, denying that plaintiff is the owner of said land, and adopting the answer of defendants Long. He alleges as cross bill that H. E. Long, being the owner of said land, and indebted to him in the sum of three thousand dollars, evidenced by his promissory notes, did, with his wife, Mary A. Long, execute to him a mortgage dated March 1, 1894, on said land, to secure said indebtedness, which mortgage is a lien prior to any claim of plaintiff. He prays that plaintiff's petition be dismissed, and that his mortgage be established as a superior lien to any right of the plaintiff. Plaintiff, in separate replies to the cross bills, denies H. E. Long's claim of title. The questions to be considered were raised by motion and demurrers, and on the final hearing decree was rendered in favor of the plaintiff. Defendants appeal.—*Affirmed.*

*E. W. Gifford* for appellants.

*White & Clark* for appellee.

GIVEN, J.—I. We first inquire as to plaintiff's claim of ownership or interest in the land. His rights,

if he has any, rest upon the admitted written contract with Sexton, under which the plaintiff took and held possession of the land, and made certain payments thereon. There is a dispute as to the amount of the payments, and whether they covered the payment due March 1, 1893; but this is immaterial, as it does appear that plaintiff failed to make later payments of purchase money when due, and pay taxes before delinquent. There is also a dispute as to whether plaintiff withheld payment because of Mr. Long's claim to the land and to possession thereof. This, too, is immaterial to the question now being considered, which is whether this written contract, by its terms, became immediately forfeited by plaintiff's failure to pay, or whether the forfeiture rests upon the election of Mr. Sexton to so treat the contract because of such failure. Appellants contend that, because of the failure to pay at the time provided in the contract, plaintiff forfeited all rights under it, and that thereby he became a tenant at will, and has no right, title, or interest in the land, and, therefore, no right to maintain this action. Appellee contends that by the terms of the contract the option is given to Mr. Sexton alone whether to treat it as forfeited or not, and that he has not so treated it; therefore the contract is in full force and effect.

We have examined the many cases cited by counsel, and reach the conclusion that there is no dispute between them as to these propositions; that parties contracting for the sale and purchase of real estate on payments may provide that a failure to make any of the payments at the time agreed shall of itself work a forfeiture of the contract (*Barrett v. Dean*, 21 Iowa, 425); that parties making such contract may make a forfeiture thereof for failure to pay at the time agreed optional with the payee. The contention is as to which of these classes this contract belongs. The first is an unusual

contract, and it is said in *Barrett v. Dean, supra:* "But to give a contract such a construction, it should be plain and clear beyond question from the terms used that such was the intention of the parties." Taking parts of this contract as quoted above alone, a forfeiture would clearly follow from the mere fact of failure to pay at the time agreed, but, taking the whole instrument together, we think it is clear that the right is reserved to Mr. Sexton alone to say whether or not a forfeiture will follow such failure. The provision that the waiver of a forfeiture shall be in writing recognizes the right to waive it. The concluding provision that Sexton waiving such forfeiture may at any time thereafter take proper legal proceedings to enforce the contract seems to us to clearly show that the right to waive the forfeiture was reserved to Sexton. When defendants asserted claim to this land, the plaintiff declined to make further payments until their rights were determined, and brought this action for that purpose. Mr. Sexton was informed, by letters written to him by his agent, of the defendants' claims, and of the plaintiff's refusal to pay because thereof. To this Sexton made no reply either claiming or waiving forfeiture, and, while it is true that his mere silence might not be construed as a waiver, it warrants the inference that, notwithstanding the plaintiff's failure, he stands upon the contract. The contract, as we view it, being one which Mr. Sexton may treat as forfeited or not, and which he has thus far treated as in force, it is a binding, enforceable contract between the parties to it. It does not appear that Mr. Sexton had done anything to prevent him from insisting upon the enforcement of the contract, and, as the option is reserved to him alone, we think the defendants have no right to insist upon a forfeiture. If nothing further appeared, we would say that the contract is an existing and enforceable contract, and that the plaintiff has such rights and interest

in the land under it as entitles him to maintain this action.

II.   We now inquire as to the title of the defendant H. E. Long, which is derived through Mrs. Long from the sheriff's sale. The judgment upon which the sale was made, being more than ten years old, was not a lien on Torpey's land until made so by levy, which was on April 21, 1892.   Torpey previously held this land under a contract with Sexton, which they had both treated as at an end long prior to the levy.   The plaintiff occupied the land as tenant under Sexton for a time prior to October 6, 1891, after which he held it under said written contract.   The evidence leaves no doubt but that at the time of the levy, April 21, 1892, Torpey was not in possession of the land, and neither had nor was making any claim thereto.   It is clear, therefore, we think, that Long took nothing by his purchase at the sheriff's sale.   It is true that in 1882 William Torpey, who had no record title, made a quit-claim deed to this land to his father, who thereafter quit-claimed to plaintiff, who was then in possession under his contract with Sexton.   Thereafter plaintiff, for the purpose of removing that cloud from Sexton's title, quit-claimed to him. Thus explained, there is nothing in this transaction at variance with the conclusion we have reached that Torpey had no interest in the land at the time of the levy and sale.   Appellants insist that, as the contract provides that forfeiture shall take place without notice unless Sexton shall, in writing, expressly waive such forfeiture, and that, as Sexton has not so waived it, the contract stands forfeited.   It is a sufficient answer to this to say that even now Mr. Sexton has the right to expressly waive a forfeiture in writing, and to have a performance of the contract, notwithstanding the decree in favor of Mrs. Long, as in that case plaintiff might waive his right to defend because of that decree.

III.   Defendants insisted that by the decree quieting title in Mrs. Long she became seized of any interest that Sexton then had in the land.   If this be true as between Mrs. Long, her grantee, and Sexton, it is certainly not true as to this plaintiff, who, though in possession under said written contract, was not made a party to that action.   As we view the facts, there was no foundation whatever for that decree, as Torpey had no interest in the land at the time of the levy and sale.   The plaintiff, not being a party to that action, is not concluded thereby, and may therefore now question defendants' title under the sale and decree.   As we view the case, the equities are manifestly with the plaintiff, and most of the authorities cited are inapplicable to the questions presented.   Our conclusions that the plaintiff has such an interest in the land as entitles him to maintain this action, and that neither the defendant Long nor the defendant Foster, his mortgagee, has any right, title, or interest therein, are so manifestly correct that we do not cite any authorities in support thereof.   The judgment of the district court is AFFIRMED.