## WALL v. TEXLOUANA PRODUCING & REFINING CO.   (No. 1953.)

(Court of Civil Appeals of Texas. Amarillo. April 19, 1922. Rehearing Denied May 17, 1922.)

**Mines and minerals ☞74—Contract construed as a contract of sale of a lease, and not as an option to purchase.**

A contract whereby plaintiff agreed to sell and convey and defendants agreed to buy an oil and gas lease, and plaintiff was to furnish an abstract showing merchantable title, and on the last payment the assignment in escrow was to be turned over to defendants, but, if defendants failed to pay or drill, the money theretofore paid was to be forfeited, and the contract was to be null and void, evidenced a contract of sale, and not an option to purchase, so that defendants' failure to pay the last installment did not annul the contract under a stipulation that they would forfeit all moneys paid thereon and the contract should be null and void, but gave plaintiff an option to affirm or disaffirm the contract, and he could either sue for the money due or declare the contract at an end.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by J. H. Wall against the Texlouana Producing & Refining Company. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

E. B. Hendricks, of Fort Worth, for appellant.

Mathis & Caldwell, of Wichita Falls, for appellee.

HUFF, C. J. The appellant, J. H. Wall, brought an action to recover $2,500 and interest upon the contract hereinafter set out against the appellee company, the contract having been entered into between Wall and J. A. Colliton, on the one part, and the appellee company, on the other. Wall sues in his own right-and as the assignee of Colliton's interest in the contract. Wall also sued out a writ of attachment and levied upon certain oil lease land as the property of the appellee, praying for a foreclosure of the attachment lien. The appellee answered, admitting the execution of the contract as alleged; that it failed to make the payment sued for because appellee exercised its right to forfeit the $10,000 paid on the contract, and the oil and gas lease which appellant and Colliton agreed to sell to appellee, and refused to pay the sum of $2,500. The contract sued on is as follows:

"This contract made and entered into this 29th day of March, A. D. 1920, by and between J. A. Colliton and J. H. Wall, both of Wichita, county, Tex., parties of the first part, and the Texlouana Producing & Refining Company, a trust estate, of Wichita county, Tex., party of the second part, witnesseth:

"For and in consideration of the sum of $12,-500.00 to be paid in cash, as hereinafter stipulated, parties of the first part hereby agree to sell and convey by proper assignment to party of the second part, and party of the second part hereby agrees to buy from parties of the first part, the oil and gas lease covering the following described real estate situated in Wichita county, Tex., to wit: The west one-half of lot No. 6 of the E. S. Kellar subdivision No. 101 of block 70 of the Red River Valley lands, containing 2½ acres.

"Parties of the first part further agree to furnish party of the second part on or before March 31, 1920, an abstract of title beginning with the A. A. Morgan estate, showing a good and merchantable title to said oil and gas lease to be vested in parties of the first part. It is further understood and agreed that party of the second part shall have five days from the date said abstract is delivered, as aforesaid, in which to examine the same and point out in writing any defects, if any there be, in the title to said lease, and it is further understood and agreed that parties of the first part shall have five days after said objections are so pointed out to them in writing in which to correct said defects.

"Party of the second part hereby agrees to place the sum of $5,000.00 in escrow in the First National Bank of Wichita Falls, Tex., together with a copy of this contract and a proper assignment of said oil and gas lease executed by parties of the first part, which sum of $5,000.00 shall be paid by said bank to parties of the first part on approval of the abstract of title by party of the second part or its attorneys. Party of the second part further agrees to pay the additional sum of $5,-000.00 on or before May 1, 1920, and the further sum of $2,500.00 on or before May 21, 1920, to said First National Bank, which sums of money shall by the bank be paid to parties of the first part.

"Party of the second part further agrees to begin the drilling of an oil and gas well with a rotary rig on said premises on or before May 1, 1920, unless prevented from doing so by fire, weather conditions, lack of supplies, or any other cause over which it has no control, and to continue said drilling with due diligence until said well is completed.

"It is hereby agreed and understood that on the payment of the last installment due under the provisions of this contract the assignment of said oil and gas lease placed in escrow as above stipulated shall be turned over by said First National Bank to party of the second part.

"It is hereby agreed and understood that in case parties of the first part fail to furnish an abstract of title, or fail to correct any defects in their title to said oil and gas lease within the time above set forth, then and in that event all moneys placed in escrow under the provisions of this contract shall be null and void.

"It is hereby agreed and understood that in case party of the second part fails to make the payments as above provided,. or fails to begin the drilling of said well as herein stipulated, then and in that event all moneys theretofore paid for said oil and gas lease shall be forfeited, and this contract shall be null and void.

"Witness our hands this the 29th day of March, A. D. 1920."

The parties present an agreed statement of facts under the statute. It is agreed that Wall owned all the right, title, interest, and estate in and to the above contract, and that J. A. Colliton had properly assigned his interest to Wall; that Wall and Colliton had performed and complied in all respects with the provisions and stipulations contained in the agreement obligatory upon them to keep and perform. The Texlouana Producing & Refining Company performed all its obligations in the agreement except it failed to pay to Wall and Colliton, or either of them, $2,500 mentioned in the agreement, due and payable by appellee to appellant on May 21, 1921. Appellee refused to pay the same because it believed it had the right to elect to forfeit all prior payments made by it under the contract and the oil and gas lease and refused to pay the sum of $2,500, being the balance due under the agreement. Wall and Colliton did not attempt to forfeit any of the payments made by appellee to appellant or Colliton nor did they at any time forfeit or attempt to forfeit the oil and gas lease, but at all times insisted on the specific performance of the contract and the payment of the $2,500, the balance due under the agreement. It is agreed the attachment issued in the suit was levied on the property described in the return thereon, and that, if appellant was entitled to enforce the agreement and collect the $2,500 and interest, appellant is also entitled to a foreclosure of his attachment lien on the property levied upon. The parties also agree and admit the execution and delivery of the contract of March 29, 1920, above set out. A trial before the court

without a jury resulted in a judgment that appellant take nothing by his suit, and that the land levied on by the attachment be released. From the above agreed facts it will be seen the only issue to be determined on this appeal is the construction of the contract sued on; that is, whether it is a contract of sale or an option.

The distinction between a sale, an agreement to sell, and an option to purchase is well defined in the opinion in Ide v. Leiser, 10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17:

"The first is the actual transfer from the grantor to the grantee by appropriate instrument of conveyance. The second is a contract to be performed in the future, and, if fulfilled, results in a sale. It is preliminary to a sale, and is not the sale. Breaches, rescission, or release may occur by which the contemplated sale never takes place. The third, an option, originally is neither a sale nor an agreement to sell. It is simply a contract, by which the owner of property * * * agrees with another person that he shall have the right to buy his property at a fixed price within a time certain. He does not sell his land; he does not then agree to sell it; but he does then sell something, viz. the right or privilege to buy at the election or option of the other party. The second party gets, in præsenti, not lands, or an agreement that he shall have lands, but he does get something of value—that is, the right to call for and receive lands if he elects."

It has been said an option is an unaccepted offer to sell. It transfers no title or right in rem, but creates a right in personam, and that right is to accept or reject the first offer within a limited or reasonable time in the future. Standiford v. Thompson, 135 Fed. 991, 68 C. C. A. 425. The obligation by which one binds himself to sell and leaves it discretionary with the other party to buy is what is termed at law an option, which is simply a contract by which the owner of property agrees with another person that he shall have a right to buy it at a fixed price, within a certain time. Black v. Maddox, 104 Ga. 157, 30 S. E. 723. An option to purchase land is a contract by which the owner agrees with another that the latter shall have the right to buy the property within a specified time, but the owner does not thereby sell the property nor agree to do so, but simply sells the right or privileges to buy at the election of the opposite party. Hamburger v. Thomas (Tex. Civ. App.) 118 S. W. 770. A contract between one party to sell and the other to purchase cannot be an option contract. Collier v. Robinson, 61 Tex. Civ. App. 164, 129 S. W. 389. See Robinson v. Collier, 53 Tex. Civ. App. 285, 115 S. W. 915; Heath v. Huffhines (Tex. Civ. App.) 152 S. W. 176. The tenor of the instant agreement imports throughout mutual undertakings. In consideration of $12,500 to be paid in cash, as stipulated, the grantors agree to sell and convey by proper assignment to the grantee, who agrees to buy from grantors, the oil and

gas lease covering the land. The grantors agree to furnish an abstract before a specified date showing merchantable title. $5,000 was to be placed in escrow, together with the contracts and proper assignment of the lease to the grantee. The sum was to be paid the grantors upon approval of the abstracts, and the balance to be paid in installments at specified dates. The grantee was to begin drilling upon the date of the payment of the second installments. Upon the last payment the assignment in escrow should be turned over to the grantee. If the grantors failed to furnish an abstract showing title, all money in escrow should be returned to the grantee. If the grantee failed to pay or drill, the money theretofore paid should be forfeited, and this contract shall be null and void. It is admitted the grantors fulfilled their undertaking. Appellant is therefore entitled to demand the fulfillment of the undertaking by appellee, according to the contract, unless it can be said from the contract that appellee could elect either to perform or to forfeit the money paid and thereby satisfy its obligation. The last clause of the contract is relied on by appellee as constituting an option or giving the right of election to appellee. It will be noted in this clause that no election is given the grantee in express terms. It does not, as is usual in such provisions, use the term "refuse," but uses alone the word "fails," negativing, it would appear, the right of choice in the grantee. However, had the terms "refuses" or "fails" been used, this would not necessarily have evidenced a purpose to leave it to the election of the grantee. We think this contract, as well as the last clause, will fall under the rule announced in the opinion by the Supreme Court upon original hearing in Moss v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847, and that the clause in the contract now under consideration and relied upon by appellee is materially different from the clause in the contract in the above case. In that case, as pointed out upon rehearing, the liquidated sum the contract stipulated should be paid upon default and accepted by the seller. The court held under that provision that the seller is bound to accept by reason of the nonperformance of the contract by the purchaser. The buyer could pay the liquidated sum and be absolved from further suit.

The appellee cites Slade v. Crum (Tex. Civ. App.) 193 S. W. 723, by this court, as sustaining its right of election. In that case this court held under the provisions of the contract therein that it would be governed by the rule in Moss v. Wren, announced on rehearing. We call attention to the opinion of this court in that case when first before this court, and for the reasons there given upon which our interpretation of the contract was based. Crum v. Slade, 154 S. W.

351. The present contract is substantially the same form which several of our courts have interpreted as a contract for the sale of land, and not an option. The case of La Prelle v. Brown (Tex. Civ. App.) 220 S. W. 151, reviews the cases in this state and calls attention to the inharmonious statements in some of the decisions. This court, in a recent case, has followed the Brown Case, supra, in McAdams v. Burdine, 232 S. W. 343. The clause in the contract "all moneys theretofore paid for said oil and gas lease shall be forfeited, and this contract shall be null and void," will not prevent the court enforcing specific performance. This, we think, is established by our courts. Moss v. Wren, supra; Redwine v. Hudman, 104 Tex. 21, 133 S. W. 426; Hemming v. Zimmerschitte, 4 Tex. 159; Williams v. Talbot, 16 Tex. 1. By the contract it is declared upon default by the grantee the money paid shall be forfeited and the contract "null and void." This does not mean it should be absolutely void and of no force or effect. The Supreme Court of the United States, in construing a provision of like import, held:

"The condition plainly is for the benefit of the vendor, and hardly less plainly for his benefit alone, except so far as it may have fixed a time when Stewart might have called for performance if he had chosen to do so, which he did not. This being so, the word 'void' means voidable at the vendor's election, and the condition may be insisted upon or waived, at his choice." Stewart v. Griffith, 217 U. S. 323, 30 Sup. Ct. 528, 54 L. Ed. 782, 19 Ann. Cas. 639.

See, also, Arroyo v. Graham, 227 U. S. 181, 33 Sup. Ct. 248, 59 L. Ed. 472.

Our Supreme Court construed the effect of the following clause in a contract for the sale of land:

"Now, if the said John Izard shall pay or cause to be paid unto the said H. Emerson, or his agents, the above-mentioned note within twelve months from the date of said note, then this article of agreement shall remain in full force and virtue; otherwise shall be null and void."

Speaking with reference thereto, the court said:

"The true position on that subject is that the failure to pay the purchase money when due gave Emerson the alternative option, to sue on the note and subject the land and other property to its payment, or to bring suit for the land, by which he could have ejected Izard from it, unless, perhaps, Izard should bring the money into court, and claim a specific performance of the contract, not having repudiated it otherwise than by failure in point of time of payment. [Citing authorities.] The failure to pay the purchase money did not, of itself, annul the contract; but it gave Emerson [vendor], with certain equitable contingencies,

the right to do so." Walker v. Emerson, 20 Tex. 707, 73 Am. Dec. 207.

Such provisions are construed as giving the vendor an option either to affirm or disaffirm the contract. He may either sue for the money due or declare the contract at an end. The election is with the vendor, and not the vendee, to pay or not to pay, as he chooses. This is the declared rule by the courts of various states. Mason v. Caldwell, 5 Gilman (Ill.) 196, 48 Am. Dec. 330; Cartwright v. Gardner, 5 Cush. (Mass.) 273; Wills v. Manufactures' National Gas Co., 130 Pa. 222, 18 Atl. 721, 5 L. R. A. 603; Woodland Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62; Wilcoxson v. Stitt, 65 Cal. 596, 4 Pac. 629, 52 Am. Rep. 310; Steel v. Long, 104 Iowa, 39, 73 N. W. 470; Allison v. Cocke's Ex'r, 106 Ky. 763, 51 S. W. 593, 21 Ky. Law Rep. 434. Other cases might be cited to the same purport. We think the trial court should have rendered judgment for appellant for the amount sued for under the contract, together with interest with a foreclosure of the attachment lien.

The judgment of the trial court will therefore be reversed, and here rendered as above indicated.

Reversed and rendered.