## TEXLOUANA PRODUCING & REFINING CO. v. WALL. (No. 427–3847.)

(Commission of Appeals of Texas, Section B. Jan. 23, 1924.)

**1. Specific performance ☞57—Vendor and purchaser ☞3(4)—Contract providing for "liquidated damages" held option to purchase and not enforceable contract of sale.**

A contract to convey land providing for liquidated damages for purchaser's nonperformance is an express or implied agreement to accept such damages in lieu of performance, and it is therefore an option to purchase rather than an absolute contract of sale, and cannot be specifically enforced.

**2. Mines and minerals ☞74 — Specific performance ☞57—Contract providing for forfeiture for breach construed as contract of sale of lease and not option to purchase, and vendor entitled to specific performance.**

A contract to sell an oil and gas lease, providing that if purchaser defaulted the money theretofore paid was to be forfeited and the contract was to be null and void, was a contract of sale and not an option to purchase, and on purchaser's default vendor had the option to enforce the contract or declare a forfeiture, the provisions as to forfeiture and that contract should be null and void, being for the benefit of vendor to coerce performance, and not to give the purchaser the option to make contract voidable by forfeiting his payments.

**3. Contracts ☞152—Construed to put loss for breach on defaulting party.**

It has never been the policy of the law to encourage a party to violate his contract in order to relieve himself of its obligations, and contracts should be construed to put the loss for breach on the defaulting party rather than,

on the party who is the innocent victim of the breach.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by J. H. Wall against Texlouana Producing & Refining Company. Judgment for defendant was reversed by the Court of Civil Appeals (241 S. W. 521), and plaintiff brings error. Affirmed.

Mathis & Caldwell, of Wichita Falls, for plaintiff in error.

E. B. Hendricks, of Fort Worth, for defendant in error.

POWELL, P. J. The Court of Civil Appeals, in its opinion in this case, favors us with a most admirable statement of the nature and result of this cause, as follows:

"The appellant, J. H. Wall, brought an action to recover $2,500 and interest upon the contract hereinafter set out against the appellee company, the contract having been entered into between Wall and J. A. Colliton, on the one part, and the appellee company, on the other. Wall sues in his own right and as the assignee of Colliton's interest in the contract. Wall also sued out a writ of attachment and levied upon certain oil lease land as the property of the appellee, praying for a foreclosure of the attachment lien. The appellee answered, admitting the execution of the contract as alleged; that it failed to make the payment sued for because appellee exercised its right to forfeit the $10,000 paid on the contract, and the oil and gas lease which appellant and Colliton agreed to sell to appellee, and refused to pay the sum of $2,500. The contract sued on is as follows:

"'This contract made and entered into this 29th day of March, A. D. 1920, by and between J. A. Colliton and J. H. Wall, both of Wichita county, Tex., parties of the first part, and the Texlouana Producing & Refining Company, a trust estate, of Wichita county, Tex., party of the second part, Witnesseth:

"'For and in consideration of the sum of $12,500.00 to be paid in cash, as hereinafter stipulated, parties of the first part hereby agree to sell and convey by proper assignment to party of the second part, and party of the second part hereby agrees to buy from parties of the first part, the oil and gas lease covering the following described real estate situated in Wichita county, Tex., to wit: The west one half of Lot No. 6 of the E. S. Kellar Subdivision No. 101 of Block 70 of the Red River Valley lands, containing 2½ acres.

"'Parties of the first part further agree to furnish party of the second part on or before March 31, 1920, an abstract of title beginning with the A. A. Morgan estate, showing a good and merchantable title to said oil and gas lease to be vested in parties of the first part. It is further understood and agreed that party of the second part shall have five days from the date said abstract is delivered, as aforesaid, in which to examine the same and point out in writing any defects, if any there be, in the title to said lease, and it is further understood and agreed that parties of the first part shall have five days after said objections are so pointed out to them in writing in which to correct said defects.

"'Party of the second part hereby agrees to place the sum of $5,000.00 in escrow in the First National Bank of Wichita Falls, Tex., together with a copy of this contract and a proper assignment of said oil and gas lease executed by parties of the first part, which sum of $5,000.00 shall be paid by said bank to parties of the first part on approval of the abstract of title by party of the second part or its attorneys. Party of the second part further agrees to pay the additional sum of $5,000.00 on or before May 1, 1920, and the further sum of $2,500.00 on or before May 21, 1920, to said First National Bank, which sums of money shall by the bank be paid to parties of the first part.

"'Party of the second part further agrees to begin the drilling of an oil and gas well with a rotary rig on said premises on or before May 1, 1920, unless prevented from doing so by fire, weather conditions, lack of supplies, or any other cause over which it has no control, and to continue said drilling with due diligence until said well is completed.

"'It is hereby agreed and understood that on the payment of the last installment due under the provisions of this contract the assignment of said oil and gas lease placed in escrow as above stipulated shall be turned over by said First National Bank to party of the second part.

"'It is hereby agreed and understood that in case parties of the first part fail to furnish an abstract of title, or fail to correct any defects in their title to said oil and gas lease within the time above set forth, then and in that event all moneys placed in escrow under the provisions of this contract shall be null and void.

"'It is hereby agreed and understood that in case party of the second part fails to make the payments as above provided, or fails to begin the drilling of said well as herein stipulated, then and in that event all moneys theretofore paid for said oil and gas lease shall be forfeited, and this contract shall be null and void.

"'Witness our hands this the 29th day of March, A. D. 1920.'

"The parties present an agreed statement of facts under the statute. It is agreed that Wall owned all the right, title, interest, and estate in and to the above contract, and that J. A. Colliton had properly assigned his interest to Wall; that Wall and Colliton had performed and complied in all respects with the provisions and stipulations contained in the agreement obligatory upon them to keep and perform. The Texlouana Producing & Refining Company performed all its obligations in the agreement except it failed to pay to Wall and Colliton, or either of them, $2,500 mentioned in the agreement, due and payable by appellee to appellant on May 21, 1921. Appellee refused to pay the same because it believed it had the right to elect to forfeit all prior payments made by it under the contract and the oil and gas lease and refused to pay the sum of $2,500, being the balance due under the agreement. Wall and Colliton did not attempt to forfeit any of the payments made by appellee to appellant or Colliton nor did they at

any time forfeit or attempt to forfeit the oil and gas lease, but at all times insisted on the specific performance of the contract and the payment of the $2,500, the balance due under the agreement. It is agreed the attachment issued in the suit was levied on the property described in the return thereon, and that, if appellant was entitled to enforce the agreement and collect the $2,500 and interest, appellant is also entitled to a foreclosure of his attachment lien on the property levied upon. The parties also agree and admit the execution and delivery of the contract of March 29, 1920, above set out. A trial before the court without a jury resulted in a judgment that appellant take nothing by his suit, and that the land levied on by the attachment be released. From the above agreed facts it will be seen the only issue to be determined on this appeal is the construction of the contract sued on; that is, whether it is a contract of sale or an option."

Upon appeal to the Court of Civil Appeals, that court reversed the judgment of the district court and rendered judgment in favor of Wall for the entire amount sued for, with foreclosure of attachment lien as prayed for. See 241 S. W. 521.

The late Chief Justice Huff, for the Court of Civil Appeals, has correctly stated the only issue in this case and has, in our judgment, correctly decided that issue. We think he has written clearly and ably and we very much doubt if we can add anything of value to what he has said.

[1, 2] This contract is an absolute agreement of sale and purchase between the respective parties thereto, unless the last paragraph thereof is an agreement by the parties releasing the company from its aforesaid obligation, at its option, to purchase this lease. In other words, we here have a definite agreement to buy the lease upon the tender of a good title. Such a title was tendered. The parties so admit. The vendors faithfully executed their part of the contract. Was it their intention, in making this contract, to permit the company to relieve itself of its obligations under the contract at any time it saw fit to do so?

In the first place, does the provision that all moneys heretofore paid for the lease shall be "forfeited," relieve the company from paying the remaining note still due? A very enlightening case in this connection is that of Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847.

We quote from the opinion of Chief Justice Gaines in that case, as follows:

"This is a certified question from the Court of Civil Appeals of the second district, and in order to save copying a long statement we undertake to state the point in the case.

"The appellants were employed as real estate brokers to make sale of certain land belonging to appellee, and, having effected, as they claimed, a sale to one Clark, brought suit for their commission. In the contract for the conveyance of the land, after specifying the price, consideration, etc., the following stipulation was inserted:

"'And it is further mutually agreed in case purchaser fails to comply with the terms hereof relating to the payment and securing of the purchase price as above mentioned and by the time herein designated, purchaser shall forfeit the amount paid hereon to seller, and the same shall be paid to seller by said trustees and accepted by said seller as and for liquidated damages for such injury and damage as the seller may suffer by reason of the nonperformance of this contract on the part of the purchaser.'

"The question certified for our determination is, whether upon this contract a sale was effected so as to entitle the appellants to their commission.

"We have numerous decisions holding that, although there is a stipulation in the contract of this character, payment of a fixed sum of money as liquidated damages does not affect the contract for sale of the land but that the seller can enforce specific performance. Hemming. v. Zimmerschitte, 4 Texas, 159; Williams v. Talbot, 16 Texas, 1; Vardeman v. Lawson, 17 Texas, 11; Bullion v. Campbell, 27 Texas, 653; Gregory v. Hughes, 20 Texas, 345.

"It seems to us that these decisions are decisive of the case. If the vendor of the land can enforce a specific performance of the contract to pay for it, then the broker has effected a sale, valid in law, and is entitled to his compensation. We have also examined the authorities cited in the certificate upon the same proposition and find it is amply supported by them. Lyman v. Gedney, 29 N. E. 282; Hull v. Sturdivant, 46 Me. 34; Hooker v. Pynchon, 74 Mass. (8 Gray) 550; Ewins v. Gordon, 49 N. H. 444; O'Connor v. Tyrrell (N. J. Eq.) 30 Atl. 1061; Palmer v. Bowen, 34 N. E. 291, affirming s. c. in 18 N. Y. Supp. 638; Kettering v. Eastlack, 107 N. W. 177.

"We therefore answer the question submitted in the affirmative and say that the contract is such that appellee is entitled to have it specifically enforced, and that therefore the appellants are entitled to their commission for making the sale."

On rehearing, in the same case, Chief Justice Gaines says:

"Upon consideration of the motion for a rehearing in this case we are of opinion that we erred in disposing originally of the question.

"Referring to the stipulation quoted at the end of the statement of the case it is to be noted that it provides that the $1,000 put up as a forfeit 'shall be paid to the seller by said trustees and accepted by said seller as liquidated damages for such injury and damage as the seller may suffer by reason of the nonperformance of this contract on part of the purchaser.' Now, it occurs to us that if nothing had been said as to the acceptance of the $1,000 by the seller, our original opinion would have been correct. But if the seller is bound to accept the sum for such damages as may be suffered by reason of the nonperformance of the contract on part of the purchaser, can he sue the proposed purchaser for specific performance of the contract? The contract evidently was that the proposed purchaser should have until a future day to pay the price and accept a conveyance, yet should he decline for any reason to

pay the price and to accept the land, he may pay the liquidated damages and be absolved from further suit.

"Moss & Raley entered into a contract with Clark to sell him certain lands and stipulated that in case he failed to buy, he should forfeit $1,000 which had been put up to enforce the bargain. He chose to forfeit the $1,000 which absolved him from further obligation.

"Before Moss & Raley were entitled to their commission they should have procured a purchaser who was willing to enter into a contract to purchase the land absolutely.

"For this reason we answer the question in the negative."

In the Wren Case, supra, the vendors were bound to accept the $1,000 in full as liquidated damages for nonperformance of a contract by the other parties. Judge Gaines said, even in a case of that kind, his original opinion would have been correct but for the expression therein that the vendors "accepted" the sum mentioned as damages.

There is some conflict among Courts of Civil Appeals, since the decision in the Wren Case, as to whether or not, under any circumstances, a contract can be specifically performed when it carries a clause providing for "liquidated damages." Most of these courts hold that a contract of this sort is a mere option where it provides for "liquidated damages" under conditions showing an expressed or implied agreement on the part of the vendor to accept such damages in lieu of a performance of the contract. In several of these cases writs of error have been denied by the Supreme Court. We think they are correct, although not in point in the instant case. Here we have no statement of any kind that the forfeited payments shall be in the nature of liquidated damages for nonperformance of the contract by the vendee. Nor is there any kind of an agreement on the part of the vendors to so accept such forfeited payments. In this case, the forfeiture provision seems rather clearly to have been inserted for the purpose of securing the performance by the company of its contract to make the remaining payments. If that was its purpose, then specific performance of the sale of the lease can be decreed. Associate Justice Williams, speaking for the Supreme Court, along this line, in Redwine v. Hudman, 104 Tex. 21, 133 S. W. 426, says:

"Much has been well said in the opinions of this court, from Hemming v. Zimmerschitte, 4 Texas, 159, to Moss v. Wren, 102 Texas, 567, affirming the right to specific performance of contracts for the conveyance of land which contain stipulations for the payment of sums of money, called penalties, or liquidated damages, inserted to secure the performance of the act agreed to be performed. A different class of contract is that where one of the parties is given the election to do something else in lieu of conveying the land.

"The principle which controls is well settled. It is thus stated: 'The question always is, What is the contract? Is it that one certain act shall be done, with a sum annexed, whether by way of penalty or damages, to secure the performance of this very act? Or is it that one of two things shall be done at the election of the party who has to perform the contract, namely, the performance of the act or the payment of the sum of money? If the former, the fact of the penal or other like sum being annexed will not prevent the court enforcing the performance of the very act, and thus carrying into execution the intention of the parties. If the latter, the contract is satisfied by the payment of a sum of money, and there is no ground for proceeding against the party having the election, to compel the performance of the other alternative.' Fry on Specific Performance, section 115; see, also, 36 Cyc. 571—2.

"Whether a contract belongs to one class or the other depends on the intention deduced from a proper construction of the instrument in which the parties have expressed their agreement."

Now, what was the intention of the parties in writing the last two paragraphs of this contract? The former of these two paragraphs was clearly for the benefit of the purchasing company. It was to have its money back if the vendors failed to tender a good title as agreed. The latter of those two paragraphs was just as clearly for the benefit of the vendors and was calculated and intended to coerce prompt compliance with the contract by the purchasing company. It provided a loss which would result to the company from its failure to comply with its contract, and in so providing specified such losses as would be calculated to bring compliance with the contract.

Plaintiff in error here cite only one case from the Supreme Court of Texas, and that is the Wren Case from which we have already quoted. They cite no authorities from other states or from the United States. They do cite several decisions of our Courts of Civil Appeals, but not one of them is anything like in point with the language in the instant case. Rather, the cases cited by counsel for plaintiff in error provide for liquidated damages for nonperformance and under such condition as to show either an expressed or implied agreement on the part of the vendors to so accept such forfeited payments.

We have been unable to find specific performance denied in any case similar to the case at bar. The Court of Civil Appeals herein cites many cases where it was decreed.

Does the provision that the payments theretofore made shall be forfeited and "contract shall be null and void" deny to vendors their right to specific performance? We think not. What does the provision "null and void," as used here, mean? We get the same answer from practically all jurisdictions. In the first place, from early

days, our Supreme Court has construed the meaning of these words used in connection as here employed. In the case of Walker v. Emerson, 20 Tex. 706, 73 Am. Dec. 207, there was a contract or agreement for sale of land. Emerson sold land to Izard. Izard was to pay a note. The contract concluded thus:

"Now if the said John Izard shall pay or cause to be paid unto the said H. Emerson, or his agent, the above mentioned note, within twelve months from the date of said note, then this article of agreement shall remain in full force and virtue, otherwise shall be null and void."

Did the provision just quoted give Izard the right to avoid payment of the note mentioned in the contract and merely forfeit the cash payment which had been made? Was the contract null and void as to this note at the option of Izard? Judge Roberts said:

"The true position on that subject is, that the failure to pay the purchase money, when due, gave Emerson the alternative option, to sue on the note and subject the land, and other property, to its payment; or to bring a suit for the land, by which he could have ejected Izard from it, unless, perhaps, Izard should bring the money into court, and claim a specific performance of the contract, not having repudiated it otherwise than by failure in point of time of payment. Estes v. Browning, 11 Tex. R. 246; Hill v. Still, 19 Id. 76; 2 Story, Eq. Jur. sec. 776—5. The failure to pay the purchase money did not, of itself, annul the contract; but it gave Emerson, with certain equitable contingencies, the right to do so. He could waive this right, and let the contract stand."

The contract just mentioned was not null and void at the option of Izard, who owed an unpaid note. It was voidable at the option of the owner of the note who had a choice of remedy.

The Supreme Court of the United States has, in an unanimous opinion, construed a similar provision in a similar way in the case of Stewart v. Griffith, 217 U. S. 323, 30 Sup. Ct. 528, 54 L. Ed. 782, 19 Ann. Cas. 639. In that case there was a cash payment of $500 and a contract for sale of land and the execution of notes in payment therefor by the purchaser. The contract of sale contained this clause:

"In case the remainder of the first half of the purchase price be not paid on November 7, 1903, then the said $500 so paid to the said Griffith is to be forfeited and the contract of sale and conveyance to be null and void, and of no effect in law, otherwise to be and remain in full force."

In the Griffith Case, Judge Holmes speaks as follows:

"The first defense is based on this document itself. It is said that the defendant made no covenant and therefore was free to withdraw if he chose to sacrifice the $500 that he had paid."

Continuing, Judge Holmes discusses this contention and concludes thus:

"The condition plainly is for the benefit of the vendor and hardly less plainly for his benefit alone, except so far as it may have fixed a time when Stewart might have called for performance if he had chosen to do so, which he did not. This being so, the word void means voidable at the vendor's election and the condition may be insisted upon or waived at his choice. Insurance Co. v. Norton, 96 U. S. 234. Oakes v. Manufacturers' Insurance Co., 135 Massachusetts, 248, 249. Titus v. Glen Falls Ins. Co., 81 N. Y. 410, 419."

Specific performance of the contract in the Griffith Case was decreed by the Supreme Court of the United States. The contract, in that case, was not held by the court to be null and void at the purchaser's option by merely forfeiting the cash payment. The language in the clause in the Griffith Case, and the contract as a whole in that case, are almost identical with the clauses used in the case at bar. If anything, the Griffith Case is a stronger one than the case at bar for the vendee.

Referring to this last paragraph in the contract in the instant case, upon which the decision herein depends, Chief Justice Huff correctly concludes as follows, as we read the decisions:

"Such provisions are construed as giving the vendor an option either to affirm or disaffirm the contract. He may either sue for the money due or declare the contract at an end. The election is with the vendor, and not the vendee, to pay or not to pay, as he chooses. This is the declared rule by the courts of various states. Mason v. Caldwell, 5 Gilman (Ill.) 196, 48 Am. Dec. 330; Cartwright v. Gardner, 5 Cush. (Mass.) 273; Wills v. Manufacturers' National Gas Co., 130 Pa. 222, 18 Atl. 721, 5 L. R. A. 603; Woodland Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62; Wilcoxson v. Stitt, 65 Cal. 596, 4 Pac. 629, 52 Am. Rep. 310; Steel v. Long, 104 Iowa, 39, 73 N. W. 470; Allison v. Cocke's Ex'r, 106 Ky. 763, 51 S. W. 593, 21 Ky. Law Rep. 434. Other cases might be cited to the same purport."

This rule has been so universally adopted because it is just and right. For instance, in the present case, all the parties, at the time of entering into the contract, believed the lease to be worth $12,500. Upon that belief they acted. Under the contract, the vendors could have been held to specific performance if the purchaser had complied with its part of the contract no matter what the oil development may have proved the lease to be worth. On the other hand, the company is contending that it had the right to continue the oil development, and, at its own option, by its own failure to pay its own notes, relieve itself of its outstanding note. Under that theory, it could gamble on the

oil market but the vendor could not do so. Of course, where a vendor makes such a contract, giving such an advantage to the other party, he must be bound thereby. The courts so hold, as already shown. But, where they have not so contracted, no such one-sided construction should be given to a contract. In the case of Redwine v. Hudman, supra, Judge Williams, speaking along this line, says:

"Of course mere improvidence in a contract does not control its plain provisions, but an unreasonableness in a suggested construction may justly prevent its adoption when a more reasonable one is as consistent with the language used."

Counsel for the company cite Carter v. Smith (Tex. Civ. App.) 184 S. W. 244. In that very case, Judge Rasbury expresses our view, as follows:

"However, if there was nothing at all in the contract indicating the intention of the parties, we would be inclined to hold that the penalty was inserted to coerce performance. But when, as here, the parties declare the penalty is to be in payment of the agreed or liquidated damages in case of breach, we are constrained to conclude that such was the intention."

In the absence of expressions showing a contrary intention, losses to the vendee like those now under discussion should be construed as being inserted to coerce performance of the contract as written. If such be the purpose of their insertion, then specific performance could be decreed. Redwine v. Hudman, supra.

[3] It has never been the policy of our law to encourage a party to violate his own agreement in a contract in order that he may in turn relieve himself entirely of certain obligations of that contract. On the contrary, he should sustain a loss for breach of his contract. The other party, the victim of the breach, is the one usually to be compensated because of such breach. It is for that reason also that specific performance should not be denied in cases like this unless the vendor has agreed that the vendee may, at his option, avoid the whole contract by forfeiting certain payments previously made. The courts are very slow to give any such construction to contracts by mere implication. This is as it should be.

No injustice is resulting from this decision. The company is merely being required to finish paying the $12,500 it agreed to pay for this lease. And it is being required to do so under a contract in which the vendors fulfilled all their obligations. The latter should not be denied a collection of their notes in this case where it does not appear that they agreed this could be done.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.