# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00535-CV

---

**Ike Brooks and Viola Brooks, Appellants**

**v.**

**Robert Acosta, Appellee**

---

**FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-16-005736, THE HONORABLE DON R. BURGESS, JUDGE PRESIDING**

---

## O P I N I O N

Ike and Viola Brooks appeal from the district court's summary judgment in favor of Robert Acosta. We will affirm.

## BACKGROUND

In 2009, the Brookses entered into a contract with Acosta (the 2009 contract) under which the Brookses leased a home from Acosta. Although the contract was initially effective from January 15, 2010, through January 30, 2011, the contract shows on its face that it was renewed and was effective until at least January 30, 2014. Acosta testified in his deposition that he drafted the contract, including the following provision, which was partially typed and partially handwritten in the section for "Additional Terms and Conditions": "LEASE TO

PURCHASE where 5% of each rent payment will be applied toward the down payment when tenant is ready to purchase at market value" (Lease to Purchase provision).

The record reflects that on at least three occasions, Acosta provided the Brookses with a document called an "Offering." Two of these documents, drafted in 2011 and 2013, contain a "Travis County Assessment District Appraisal" value of $275,000 for the home along with an estimated down payment and a "Credit Factor," which presented the total amount of dollars collected under the Lease to Purchase provision. The third Offering document, drafted in July 2014, presents an "asking price" of $378,000 and still lists a Credit Factor, with the total for 55 months of payments (from January 2010 through July 2014) having reached $4,056.25. The July 2014 Offering document describes the $4,056.25 as "the end balance of your escrow account for the subject property." That same month, Acosta presented the Brookses with another contract (the 2014 contract) that increased the amount of their monthly payment from $1,475 to $1,775 and, in the spot where the Lease to Purchase provision had previously been, instead contains a handwritten provision stating, "If any additional person in excess of the herein specified occupy the premises, rents will be adj. accordingly." This 2014 contract did not contain a Lease to Purchase Provision. The term of the 2014 contract is from August 1, 2014, through August 30, 2015. The Brookses do not dispute that they signed the 2014 contract in July 2014.

On November 23, 2014, Acosta, in a text message, told the Brookses that because they would be unable to meet their November rent obligation of $1,952 due to Mr. Brooks's health issues, they had to vacate the property by 5:00 p.m. Wednesday, November 26, 2014, the day before Thanksgiving. He followed up with a letter the same day in which he extended the time for them to move out to November 30, 2014, and the Brookses moved out by that date. The

2

Brookses then requested that the $4,056.25 and their $800 security deposit be returned to them. Acosta refused, explaining that he would retain $550 of the security deposit to repaint the kitchen cabinets, which he alleges the Brookses repainted without permission, and he kept the remaining balance of the security deposit to offset the $1,952 he alleges they owed as rent. He also declined to return the $4,056.25. Relying solely on the premise that the 2009 contract was an executory contract[1] subject to the requirements of subchapter D, chapter 5, of the Property Code, the Brookses sued Acosta for violations of the Deceptive Trade Practices Act, various Property Code violations, and breach of contract. Acosta asserted a counterclaim seeking $1,702.50 in delinquent rent and costs for unspecified repairs to the property. Acosta then moved for summary judgment on the grounds that (1) the 2009 contract was not an executory contract, (2) Acosta was entitled to assert the affirmative defense of novation, and (3) the Brookses cannot prove that they incurred damages as a result of Acosta's acts. The district court granted Acosta's summary judgment, Acosta nonsuited his counterclaim, and this appeal ensued.

## STANDARD OF REVIEW

Acosta moved for summary judgment on both no-evidence and traditional grounds. We review the trial court's decision on a motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When the trial court does not specify the grounds for its ruling, we must affirm if any of the movant's theories has merit. *Id.*

---

[1] An "executory contract" is also known as a "contract for deed." *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005). Unlike a mortgage, a contract for deed allows a seller to retain title to the property until the purchaser has paid for the property in full. Such sales are subject to statutory requirements, including a provision that the seller provide the purchaser with an annual accounting statement on or before January 31 each year. *See* Tex. Prop. Code § 5.077. If the seller fails to send the statement on time, the statute makes the seller liable to the purchaser for "liquidated damages in the amount of $250 a day" for each day the statement is overdue and "reasonable attorney's fees." *Id.* § 5.077 (c).

When a party moves for summary judgment on both traditional and no-evidence grounds we first address the no-evidence grounds. *Id.* Traditional summary judgment is proper only if the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). No-evidence summary judgment is proper "unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.* R. 166a(i).

## DISCUSSION

The parties concede that this case hinges on whether the 2009 contract was an "executory contract" under subchapter D, chapter 5, of the Property Code. *See* Tex. Prop. Code §§ 5.061-.086 (Executory Contract for Conveyance). Subchapter D provides a series of protections and requirements relating to executory contracts but does not explicitly define "executory contract." *Shook v. Walden*, 368 S.W.3d 604, 625 (Tex. App.—Austin 2012, pet. denied) (noting the absence of a definition for "executory contract" and collecting cases in which courts equate "executory contract" with "contract for deed"). The Brookses assert that the 2009 contract is an executory contract under section 5.062 of the Property Code, which provides that, solely for the purpose of subchapter D, "an option to purchase real property that includes or is combined or executed concurrently with a residential lease agreement, together with the lease, is considered an executory contract for conveyance of real property." Tex. Prop. Code § 5.062(a)(2). There is no dispute that the 2009 contract is a lease that contained the Lease to Purchase provision. We must therefore determine whether the Lease to Purchase provision of the 2009 contract was an "option to purchase."

4

An option to purchase is a land contract by which the owner gives another the right to buy property at a fixed price within a certain time. *Bryant v. Cady*, 445 S.W.3d 815, 819 (Tex. App.—Texarkana 2014, no pet.); *Jarvis v. Peltier*, 400 S.W.3d 644, 650 (Tex. App.—Tyler 2013, no pet.); *Faucette v. Chantos*, 322 S.W.3d 901, 907 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Casa El Sol-Acapulco, S.A. & Zu Corp. v. Fontenot*, 919 S.W.2d 709, 717 n.9 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd); *State v. Clevenger*, 384 S.W.2d 207, 210 (Tex. App.—Houston 1964, writ ref'd n.r.e.); *Knox v. Brown*, 277 S.W. 91, 94 (Tex. Comm'n App. 1925); *Wall v. Texlouana Producing & Ref. Co.*, 241 S.W. 521, 523 (Tex. App.—Amarillo 1922, writ granted), *aff'd* 257 S.W. 875 (Tex. Comm'n App. 1924); *see North Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 606 (Tex. 2016) (an option agreement "merely gives the optionee the option to purchase property or execute a lease within a certain time period"). Rather than containing a fixed price, the 2009 contract's Lease to Purchase provision specified that the Brookses could purchase the home at "market value," without specifying how "market value" might be determined. In the absence of a fixed price or other evidence that the parties had agreed on the meaning of "market value," we conclude that the Lease to Purchase provision was not an option to purchase. *Cf. Jarvis*, 400 S.W.3d at 650 (holding that an "option to purchase" provision in a contract did not provide an option agreement because it did not give the buyer a right to compel sale of the property and did not state a fixed purchase price). Accordingly, the 2009 contract is not an executory contract under section 5.062, and the district court properly granted Acosta's motion for summary judgment. In light of this determination, we need not address the Brookses' two remaining issues.

**CONCLUSION**

We affirm the district court's judgment.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Kelly

Filed:   August 14, 2019